# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SUHAIL NAJIM ABDULLAH AL SHIMARI; SALAH HASAN NUSAIF
JASIM AL-EJAILI; ASA'AD HAMZA HANFOOSH AL-ZUBA'E,
Plaintiffs-Appellees,

and

TAHA YASEEN ARRAQ RASHID; SA'AD HAMZA HANTOOSH AL-
ZUBA'E,
Plaintiffs,

v.

CACI PREMIER TECHNOLOGY, INC.,
Defendant-Appellant/Third-
Party Plaintiff-Appellant,

and

TIMOTHY DUGAN; CACI INTERNATIONAL, INC.; L-3 SERVICES,
INC.,
Defendants,

and

UNITED STATES OF AMERICA; JOHN DOES 1-60,
Third-Party Defendants-
Appellees.

On Appeal from the United States District Court for the
Eastern District of Virginia

## BRIEF FOR THE UNITED STATES AS
## THIRD-PARTY DEFENDANT

**COUNSEL LISTED ON INSIDE COVER**

YAAKOV M. ROTH
  *Acting Assistant Attorney
  General*

ERIK S. SIEBERT
  *United States Attorney*

SHARON SWINGLE
MICHAEL SHIH
  *Attorneys, Appellate Staff
  Civil Division, Room 7268
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-6880*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE .................................................................3

     A.    Statutory Background.............................................................3

     B.    Factual Background .................................................................3

     C.    Prior Proceedings .................................................................6

SUMMARY OF ARGUMENT .................................................................11

STANDARD OF REVIEW.................................................................12

ARGUMENT .................................................................12

I.    This Court Should Affirm The Dismissal Of CACI's Third-Party Claims Against The United States On Sovereign-Immunity Grounds.................................................................12

     A.    No Statute Expressly Waives Sovereign Immunity for CACI's Third-Party Claims.................................................................13

     B.    Congress Has Not Expressly Waived Sovereign Immunity for Tort Claims Based on Alleged Violations of International Law. .................................................................15

     C.    *Jus Cogens* Norms Do Not, of Their Own Force, Create Rights and Obligations Enforceable in United States Courts. .................................................................20

II.    Alternatively, The District Court's Entry Of Summary Judgment Against CACI Should Be Affirmed.................................................................25

CONCLUSION .................................................................30

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

*Al Shimari v. CACI Premier Tech., Inc.*,
775 F. App'x 758 (4th Cir. 2019), *cert. denied*,
141 S. Ct. 2850 (2021) ............................................................. 9

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) .............................................................. 18

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*,
461 U.S. 273 (1983) .............................................................. 13

*Calderon v. GEICO Gen. Ins. Co.*,
809 F.3d 111 (4th Cir. 2015) ............................................... 12

*Committee of U.S. Citizens Living in Nicar. v. Reagan*,
859 F.2d 929 (D.C. Cir. 1988)............................................... 22

*Crouse v. Town of Moncks Corner*,
848 F.3d 576 (4th Cir. 2017) ................................................. 1

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ......................................................... 13, 14

*FDIC v. Meyer*,
510 U.S. 471 (1994) .............................................................. 14

*Franks v. Ross*,
313 F.3d 184 (4th Cir. 2002) ............................................... 12

*Gaffney v. Riverboat Servs. of Ind., Inc.*,
451 F.3d 424 (7th Cir. 2006) ................................................. 1

*Goldstar (Pan.) S.A. v. United States*,
967 F.2d 965 (4th Cir. 1992) .......................................... 3, 15

*Heckler v. Community Health Servs. of Crawford County, Inc.*,
  467 U.S. 51 (1984) ...................................................................17

*Igartúa-De La Rosa v. United States*,
  417 F.3d 145 (1st Cir. 2005) ...............................................22

*Irwin v. Department of Veterans Affairs*,
  498 U.S. 89 (1990) .................................................................13

*Jesner v. Arab Bank, PLC*,
  584 U.S. 241 (2018) ...............................................................23

*KBR, Inc., Burn Pit Litig., In re*,
  744 F.3d 326 (4th Cir. 2014) ...............................................28

*Lane v. Pena*,
  518 U.S. 187 (1996) ...............................................................14

*Lapides v. Board of Regents*,
  535 U.S. 613 (2002) ...............................................................18

*McAbee Constr., Inc. v. United States*,
  97 F.3d 1431 (Fed. Cir. 1996) ...............................................28

*Medellín v. Texas*,
  552 U.S. 491 (2008) ...............................................................21

*Merrell Dow Pharm. Inc. v. Thompson*,
  478 U.S. 804 (1986) ...............................................................13

*Mironescu v. Costner*,
  480 F.3d 664 (4th Cir. 2007) ...............................................20

*Office of Pers. Mgmt. v. Richmond*,
  496 U.S. 414 (1990) ...............................................................17

*Peck v. U.S. Dep't of Labor, Admin. Review Bd.*,
  996 F.3d 224 (4th Cir. 2021) ...............................................14

*Princz v. Federal Republic of Germany,*
  26 F.3d 1166 (D.C. Cir. 1994)..............................................................19

*Randall v. United States,*
  95 F.3d 339 (4th Cir. 1996) ................................................................14

*Robinson v. Equifax Info. Servs., LLC,*
  560 F.3d 235 (4th Cir. 2009) ..............................................................26

*Robinson v. U.S. Dep't of Educ.,*
  917 F.3d 799 (4th Cir. 2019) ..............................................................14

*Saleh v. Bush,*
  848 F.3d 880 (9th Cir. 2017) ..............................................................19

*Saleh v. Titan Corp.,*
  564 U.S. 1037 (2011) ............................................................................5

*Saltany v. Reagan,*
  702 F. Supp. 319 (D.D.C. 1988), *aff'd,*
  886 F.2d 438 (D.C. Cir. 1989)............................................................16

*Sampson v. Federal Republic of Germany,*
  250 F.3d 1145 (7th Cir. 2001) ............................................................19

*Sanchez-Espinoza v. Reagan,*
  770 F.2d 202 (D.C. Cir. 1985).......................................................15-16

*Sanchez-Llamas v. Oregon,*
  548 U.S. 331 (2006) ............................................................................21

*Serra v. Lappin,*
  600 F.3d 1191 (9th Cir. 2010) ............................................................22

*Siderman de Blake v. Republic of Argentina,*
  965 F.2d 699 (9th Cir. 1992) .........................................................19, 24

*Slattery v. Department of Justice,*
  590 F.3d 1345 (Fed. Cir. 2010) .......................................... 28

*Smith v. Socialist People's Libyan Arab Jamahiriya,*
  101 F.3d 239 (2d Cir. 1996) ................................................ 19

*Sosa v. Alvarez-Machain,*
  542 U.S. 692 (2004) ........................................................... 23

*Tobar v. United States,*
  639 F.3d 1191 (9th Cir. 2011) ...................................... 15, 16

*Ullah v. Garland,*
  72 F.4th 597 (4th Cir. 2023) ............................................. 12

*United States v. Beggerly,*
  524 U.S. 38 (1998) ...................................................... 16, 17

*United States v. Eckford,*
  73 U.S. (6 Wall.) 484 (1867) ............................................. 17

*United States v. King,*
  395 U.S. 1 (1969) ............................................................... 13

*United States v. Mitchell,*
  445 U.S. 535 (1980) ........................................................... 13

*United States v. Nordic Vill., Inc.,*
  503 U.S. 30 (1992) ............................................................. 13

*United States v. Serafini,*
  826 F.3d 146 (4th Cir. 2016) ............................................. 29

*United States v. William Cramp & Sons Ship & Engine Bldg. Co.,*
  206 U.S. 118 (1907) ........................................................... 25

*United States v. Wong,*
  575 U.S. 402 (2015) ........................................................... 16

*United States v. Yousef,*
  327 F.3d 56 (2d Cir. 2003) ................................................................. 24

*United States v. Yunis,*
  924 F.2d 1086 (D.C. Cir. 1991) ......................................................... 24

*Wachovia Bank, Nat'l Ass'n v. Schmidt,*
  445 F.3d 762 (4th Cir. 2006) ......................................................... 27, 28

*Yousuf v. Samantar,*
  699 F.3d 763 (4th Cir. 2012) ............................................................... 8

**Treaty:**

Vienna Convention on the Law of Treaties
  art. 53, May 23, 1969, 1155 U.N.T.S. 331 ...................................... 8-9

**Statutes:**

Federal Tort Claims Act,
  28 U.S.C. § 1346(a)(2) ...................................................................... 16
  28 U.S.C. § 1346(b) ......................................................................... 14
  28 U.S.C. § 2680(j) ........................................................................... 15
  28 U.S.C. § 2680(k) ......................................................................... 15

Foreign Sovereign Immunities Act of 1976,
  28 U.S.C. § 1330 *et seq.* ................................................................. 18
  28 U.S.C. § 1332 .............................................................................. 14

National Defense Authorization Act for Fiscal Year 2010,
  Pub. L. No. 111-84, § 1038, 123 Stat. 2190, 2451-52 (Oct. 28, 2009) .... 5

Pub. L. No. 105-277, div. G, 112 Stat. 2681, 2681-761 (1998) ................ 20

5 U.S.C. § 702 .................................................................................... 16

28 U.S.C. § 1291 .................................................................................. 2

28 U.S.C. § 1331 ..................................................... 14

28 U.S.C. § 1350 ....................................................... 3

28 U.S.C. § 1367(a) ................................................ 14

28 U.S.C. § 1491(a)(1) ............................................ 16

41 U.S.C. § 7105(b)(1) .............................................. 5

**Regulations:**

48 C.F.R. § 4.101 ...................................................27

48 C.F.R. § 252.237-7010 ......................................... 5

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ......................................... 2

Fed. R. Civ. P. 60(b) ................................................ 17

**Other Authorities:**

*All*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/all (last visited May 1, 2025) .........................29

Curtis A. Bradley, *Breard, Our Dualist Constitution, and the Internationalist Conception*,
51 Stan. L. Rev. 529 (1999) ................................................22

# STATEMENT OF JURISDICTION

Plaintiffs sued CACI Premier Technology, Inc. (CACI), a government contractor, under the Alien Tort Statute (ATS) for injuries plaintiffs allegedly suffered while detained at the Abu Ghraib prison in Iraq. CACI filed a third-party complaint against the United States, invoking four state-law causes of action to demand compensation for any damages CACI might owe to plaintiffs.

On March 22, 2019, the district court dismissed one of CACI's third-party claims for want of subject-matter jurisdiction and granted summary judgment to the United States on the remaining claims. JA4013. As explained below, *infra* pp. 12-24, the court lacked subject-matter jurisdiction over all of CACI's claims against the United States due to the United States' sovereign immunity.[1]

---

[1] CACI also named sixty John Does as third-party defendants. JA3957 n.2. The district court severed the claims against the Does and stayed the claims "pending resolution of the underlying action." JA3957 n.2 (quotation marks omitted). This order created "two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability." *See Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582 n.2 (4th Cir. 2017) (quoting *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 41 (7th Cir. 2006)). The John Doe claims remain stayed.

Plaintiffs' claims against CACI went to trial.  On January 10, 2025, the court entered an amended judgment for plaintiffs.  JA6479.  CACI timely appealed both the judgment on its third-party complaint and the judgment in plaintiffs' underlying lawsuit.  JA6480-6483; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The questions presented are:

(1) Whether the United States has sovereign immunity with respect to CACI's third-party claims; and

(2) Whether, if sovereign immunity does not bar CACI's third-party claims, the claims are foreclosed by a prior settlement agreement covering "all claims and disputes . . . arising out of or related to" the task orders under which CACI performed services at, and supplied personnel to, the Abu Ghraib prison.  JA3738.[2]

---

[2] The government takes no position on the other issues raised by CACI in this appeal.

## STATEMENT OF THE CASE

### A.  Statutory Background

The Alien Tort Statute provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  The ATS does not, however, waive federal sovereign immunity.  *Goldstar (Pan.) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992).  "[A]ny party asserting jurisdiction under the Alien Tort Statute must establish, independent of that statute, that the United States has consented to suit."  *Id.*

### B.  Factual Background

Following the 2003 invasion of Iraq, the United States military used the Abu Ghraib prison outside Baghdad as a detention center.  JA565.  CACI provided the military with civilian interrogators who worked alongside military personnel at the prison.  JA565.  CACI supplied these interrogators to the United States pursuant to two task orders.  Under Task Order 35, CACI agreed to "provide Interrogation Support Cells, as directed by military authority, . . . to assist, supervise, coordinate, and monitor all aspects of interrogation activities, in order to provide timely and actionable intelligence to the commander."

JA8026.  Under Task Order 71, CACI agreed to "[a]ssist" the military "in performance of HUMINT [human intelligence] and Counterintelligence . . . missions at secure and fixed locations, in order to free military Tactical HUMINT Teams . . . to focus on support to ongoing operations and collection activities."  JA8073.  Both task orders were issued and administered by the U.S. Department of the Interior and signed by federal contracting officers on behalf of the United States.  *See* JA8021 (Task Order 35); JA8070 (Task Order 71).

A later military investigation concluded that "shameful events occurred at the detention facility of Abu Ghraib" and "identified forty-four incidents of detainee abuse."  JA1199.  The investigation further concluded that some of these incidents involved CACI personnel.  JA1342-1343, JA1344, JA1346.

Recognizing that the events that took place at Abu Ghraib prison "were highly likely to result in litigation," CACI retained outside counsel in May 2004.  JA3742.  Later that year, several individuals filed a putative class action on behalf of various categories of Abu Ghraib detainees, naming (among other entities) CACI's parent company and two of that company's other subsidiaries as defendants.  JA3748-3753.

In 2006, the complaint was amended to name CACI as a defendant. JA3762, JA3767. That lawsuit was not fully resolved until 2011. *See Saleh v. Titan Corp.*, 564 U.S. 1037 (2011).

The government terminated Task Orders 35 and 71 at some point before 2007. *See* JA3738.[3] CACI challenged that termination (and the termination of nine other task orders) in the Civilian Board of Contract Appeals.[4] *See* JA3738. In 2007, CACI and the government entered into "a full and final settlement of all claims and disputes arising out of the 11 terminated Task Orders." JA3738. Under the settlement, the government agreed to pay CACI $200,000. JA3738. In exchange, CACI agreed that the payment

> shall constitute full and final payment, settlement, and accord
> and satisfaction of all claims and disputes by [the U.S.
> Department of the Interior] and CACI arising out of or related
> to the terminated Task Orders, . . . including but not limited

---

[3] Congress eventually prohibited the Department of Defense from relying on contractors to perform interrogation functions. National Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, § 1038, 123 Stat. 2190, 2451-52 (Oct. 28, 2009); *see* 48 C.F.R. § 252.237-7010 (implementing prohibition).

[4] The Civilian Board of Contract Appeals was created by the Contract Disputes Act of 1978, 41 U.S.C. § 7105(b)(1), which sets forth a comprehensive system for resolving disputes between a contractor and a procuring agency relating to the performance of nearly all contracts with the government.

to all claims for interest, general administrative costs, [and] direct and indirect costs of all kinds whatsoever relating to the terminated Task Orders.

JA3738. The class-action lawsuit against CACI was still pending when this settlement was concluded.

## C. Prior Proceedings

**1.** Plaintiffs are Iraqi nationals who allege that they were abused while detained at Abu Ghraib prison. JA3955-3956. Plaintiffs sued CACI for damages under the ATS. JA3957. Their sole remaining claim is that CACI "conspir[ed] with military personnel to inflict torture or cruel, inhuman, or degrading treatment on detainees . . . that resulted in [them] being tortured or subjected to cruel, inhuman, or degrading treatment." *See* JA6399-6404 (verdict forms). Plaintiffs did not sue the United States or any federal officer or employee.

**2.** After numerous dispositive motions and several appeals, CACI filed a third-party complaint against the United States. JA549.[5] The complaint alleged that the government is liable for any damages CACI might owe plaintiffs under four state-law causes of action:

---

[5] At this Court's invitation, the United States participated as amicus curiae in an earlier appeal, *Al Shimari v. CACI Int'l, Inc.*, No. 09-1335 (4th Cir.).

6

common-law indemnification, exoneration, contribution, and breach of contract. JA558-562. The government moved to dismiss the third-party complaint for lack of subject-matter jurisdiction on sovereign-immunity grounds. The government also moved for summary judgment on various grounds, including that CACI's third-party claims were barred by the 2007 settlement agreement.

The district court determined that CACI's breach-of-contract claim, which alleges that the government "breached an implied duty of good faith and fair dealing" in its responses to CACI's discovery requests, is barred by sovereign immunity. JA4002. But the court concluded that sovereign immunity did not bar CACI's remaining third-party claims, which are "derivative of plaintiffs' [ATS] claims against CACI" itself. JA3962 n.3.

To reach that conclusion, the court began by expressing considerable skepticism as to whether the doctrine of sovereign immunity should even exist. JA3965-3974. The court noted "academic and judicial unease with the way in which sovereign immunity ha[s] developed into a bar to recovery." JA3977. The court also unfavorably compared the United States' application of the doctrine to the practice

in other countries.  JA3976-3977.  The court eventually acknowledged,

however, that sovereign immunity bars the government from "be[ing]

sued in tort without its consent."  JA3979.

The court failed to identify a single statute expressly waiving the

United States' sovereign immunity for any of CACI's claims.  But the

court nevertheless concluded that "the [federal] government may . . .

waive its [sovereign] immunity impliedly through its conduct."  JA3974

n.6.  The court derived this purported rule from cases authorizing

equitable tolling of limitations periods and allowing counterclaims,

cases concerning the sovereign immunity of States, and cases

concerning the sovereign immunity of foreign sovereigns.  JA3974 n.6.

Finally, the court determined that the United States has impliedly

waived sovereign immunity for claims based on "alleged *jus cogens*

violations committed by Americans."  JA3985.  "A *jus cogens* norm" is

"'a norm accepted and recognized by the international community of

States as a whole as a norm from which no derogation is permitted and

which can be modified only by a subsequent norm of general

international law having the same character.'"  *Yousuf v. Samantar*,

699 F.3d 763, 775 (4th Cir. 2012) (quoting Vienna Convention on the

Law of Treaties art. 53, May 23, 1969, 1155 U.N.T.S. 331). The court

inferred this waiver from the United States's "accept[ance]" of "the law

of nations," JA3987, its ratification of the Convention Against Torture,

JA3992, its "participat[ion] in the Nuremberg trials and the parallel

development of peremptory norms of international law," JA3995, and

its "[m]embership in the [c]ommunity of [n]ations," JA3995.[6]

On the merits, the court granted summary judgment to the

government on CACI's remaining third-party claims. JA4012. The

court did so because, in the 2007 settlement agreement, CACI agreed to

a "'full and final' settlement of 'all claims and disputes' 'arising out of or

related to' the task orders" governing CACI's activities at Abu Ghraib.

JA4009.

---

[6] In the same order, the district court rejected CACI's assertion of
derivative sovereign immunity because the court did not believe that
"the United States would be immune from suit if [plaintiff's ATS] claims
had been brought against it." JA4005. CACI appealed that denial to
this Court. On appeal, the government filed an amicus brief solely to
"correct[] the district court's fundamental misunderstanding of both
sovereign immunity and international law." Brief for the United States
as Amicus Curiae at 1, *Al Shimari v. CACI Premier Tech., Inc.*, No.
19-1328 (4th Cir. Apr. 30, 2019). This Court dismissed the appeal for
lack of subject-matter jurisdiction without reaching the issues raised in
the amicus brief. *Al Shimari v. CACI Premier Tech., Inc.*, 775 F. App'x
758, 759 (4th Cir. 2019), *cert. denied*, 141 S. Ct. 2850 (2021).

**3.** In the meantime, plaintiffs' underlying lawsuit against CACI went to discovery. During that process, the government invoked the state-secrets privilege over three categories of classified information, such as the identities of the interrogators and interpreters who participated in the questioning of specific Abu Ghraib detainees (including plaintiffs). *See* JA681-689, JA910-918, JA1047-1070. The lawfulness of those privilege invocations is not at issue here.

Notwithstanding the government's assertion of privilege, the government disclosed around 60,000 pages of documents. *See* Dkt. No. 1068, at 2. The government also permitted several interrogators to be deposed pseudonymously. *See id.* These interrogators were allowed to answer a broad range of questions, including questions relating to the interactions between CACI personnel and specific detainees, the involvement of CACI personnel in determining conditions of confinement, and the extent to which U.S. military personnel controlled the specific actions of CACI personnel. *See id.*

Plaintiffs' claims eventually went to trial. The first trial ended with a hung jury. JA4565. The second trial resulted in a jury verdict

for plaintiffs.  JA6399-6404.  The jury awarded plaintiffs a total of $42 million in compensatory and punitive damages.  JA6399-6404.

## SUMMARY OF ARGUMENT

This Court should affirm the dismissal of CACI's third-party complaint on sovereign-immunity grounds.  The Supreme Court and this Court have repeatedly held that only Congress can waive the United States' sovereign immunity and that any such waiver must be explicit and unambiguous.  Neither the district court nor CACI have identified any statute waiving the United States' sovereign immunity for CACI's claims.  Yet the district court implied an extra-statutory waiver for claims alleging *jus cogens* violations from, among other things, the United States' very existence as a country.  As CACI now agrees (Br. 31), that unprecedented conclusion "is patently incorrect."

If this Court reaches the merits, it should affirm the district court's entry of summary judgment against CACI because CACI settled "all claims and disputes . . . arising out of or relating to" the task orders under which it performed services at, and supplied personnel to, the Abu Ghraib prison during the relevant period.  JA3738.

## STANDARD OF REVIEW

"[T]he existence of sovereign immunity is a question of law that [this Court] review[s] de novo." *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). "[A] district court's order granting summary judgment" is likewise "review[ed] de novo." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015).

## ARGUMENT

**I.   This Court Should Affirm The Dismissal Of CACI's Third-Party Claims Against The United States On Sovereign-Immunity Grounds.**

The district court correctly dismissed CACI's breach-of-contract claim against the United States on sovereign-immunity grounds. *See* JA4001-4005. CACI has forfeited any challenge to that conclusion by failing to address it in its opening brief. *See Ullah v. Garland*, 72 F.4th 597, 602 (4th Cir. 2023). But the court erroneously reached the merits of CACI's remaining third-party claims because "the United States does not retain sovereign immunity for violations of *jus cogens* norms of international law." JA4001.

On appeal, CACI has not merely declined to defend the court's conclusion. CACI now agrees (Br. 31) that the court's conclusion "is patently incorrect." Because "[j]urisdiction may not be sustained on a

theory that the plaintiff has not advanced," *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986), and because the district court's sovereign-immunity analysis is indefensibly flawed, this Court should affirm the dismissal of all of CACI's third-party claims against the United States on sovereign-immunity grounds.

## A. No Statute Expressly Waives Sovereign Immunity for CACI's Third-Party Claims.

The "United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotation marks omitted). "[T]he power to waive the federal government's immunity is Congress's prerogative. . . ." *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). It follows that "the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Such consent "cannot be implied but must be unequivocally expressed" by the enactment of a clear and unambiguous waiver in the text of a statute. *United States v. King*, 395 U.S. 1, 4 (1969); *see also, e.g.*, *Mitchell*, 445 U.S. at 538 (same); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990) (same); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992) (same); *Lane v.*

*Pena*, 518 U.S. 187, 190 (1996) (same); *Kirtz*, 601 U.S. at 48 (same); *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801-02 (4th Cir. 2019); *Peck v. U.S. Dep't of Labor, Admin. Review Bd.*, 996 F.3d 224, 228-29 (4th Cir. 2021) (same). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

On appeal, CACI has abandoned any argument that any statute waives sovereign immunity for its third-party claims. Nor could any such argument succeed. CACI's third-party complaint identified four statutes that purportedly waive immunity. JA550. Three of these are general statutes granting district courts federal-question jurisdiction, diversity jurisdiction, and supplemental jurisdiction. JA550 (citing 28 U.S.C. §§ 1331, 1332, and 1367(a)). Such statutes "merely establish[] a subject matter that is within the competence of federal courts to entertain"; they are not "general waiver[s] of sovereign immunity." *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (quotation marks omitted). The fourth statute is the Federal Tort Claims Act (FTCA), which waives sovereign immunity and creates a cause of action for certain tort claims against the United States. 28 U.S.C. § 1346(b).

This waiver expressly does not apply to claims "arising in a foreign country," *id.* § 2680(k), and claims "arising out of the combatant activities of the military . . . during time of war," *id.* § 2680(j). Accordingly, and as the district court correctly recognized, "the FTCA does not waive sovereign immunity" for CACI's claims to the extent they sound in tort.  JA3962.

### B.  Congress Has Not Expressly Waived Sovereign Immunity for Tort Claims Based on Alleged Violations of International Law.

The district court nevertheless reached the merits of some of CACI's third-party claims on the theory that the United States has impliedly waived sovereign immunity for violations of *jus cogens* norms of international law.  JA3962.  That theory—which CACI concedes (Br. 31-33) is wrong—is foreclosed by Supreme Court and Circuit precedent.

The district court failed to cite, and we are not aware of, any statute expressly waiving the government's sovereign immunity for tort claims based on alleged violations of international law.  The ATS is a jurisdictional statute that does not waive sovereign immunity.  *Goldstar (Pan.) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992); *accord Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011); *Sanchez-*

*Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985).  The

Administrative Procedure Act does not waive sovereign immunity for

damages actions.  5 U.S.C. § 702 (referring to an "action . . . seeking

relief other than money damages").  The Tucker Act does not waive

sovereign immunity for claims sounding in tort.  28 U.S.C.

§§ 1346(a)(2), 1491(a)(1).  The military's administrative-claims statutes

contain no waiver of sovereign immunity at all.  *Tobar*, 639 F.3d at

1196 (Military Claims Act); *Saltany v. Reagan*, 702 F. Supp. 319, 321

(D.D.C. 1988), *aff'd*, 886 F.2d 438, 441 (D.C. Cir. 1989) (per curiam)

(Foreign Claims Act).  And the FTCA's waiver of sovereign immunity

does not apply to claims of the type asserted here.  *See supra* p. 15.

The district court sidestepped the absence of any express waiver

by concluding that waivers of sovereign immunity may be implied.

JA3974 n.6.  The court derived that purported rule from four inapposite

cases.  In *United States v. Wong*, 575 U.S. 402 (2015), the Supreme

Court held that the limitations period of the FTCA is subject to

equitable tolling because, as a matter of statutory construction,

Congress had not made the limitations period jurisdictional.  *Id.* at 408-

12.  In *United States v. Beggerly*, 524 U.S. 38 (1998), the Supreme Court

construed Federal Rule of Civil Procedure 60(b) to permit reopening of a judgment obtained by the United States in a case where there has been a grave miscarriage of justice without the need for an "independent basis for jurisdiction." 524 U.S. at 46-47. In *United States v. Eckford*, 73 U.S. (6 Wall.) 484 (1867), the Supreme Court held that a money judgment for the United States may sometimes be offset by counterclaims "which the acts of Congress have authorized." *Id.* at 491. And in *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), the Supreme Court declined to decide whether sovereign immunity categorically bars courts from applying estoppel against the government because the particular estoppel claim was barred by the Appropriations Clause. *Id.* at 423-24. The Court recognized, however, that the arguments supporting such a prohibition "are substantial." *Id.* at 423 (quoting *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984)). None of these cases comes close to abrogating the long-settled principle, articulated in dozens of Supreme Court and Circuit decisions, that waivers of sovereign immunity must be explicit.

Next, the district court analogized the United States' sovereign immunity to the States' sovereign immunity under the Eleventh Amendment. JA3974 n.6. But the Supreme Court specifically distinguished the two forms of immunity in one of the cases that the district court cited. *See Lapides v. Board of Regents*, 535 U.S. 613, 623 (2002) (holding that, unlike the federal government, States can waive sovereign immunity by voluntarily invoking federal-court jurisdiction).

Finally, the district court suggested that cases involving foreign states demonstrate that the United States can waive its sovereign immunity by implication. JA3974 n.6 (relying on student law review comment). To the extent the two doctrines are related, principles of foreign sovereign immunity actually undermine the court's decision. The Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. § 1330 *et seq.*, is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The FSIA confers "immunity . . . involving alleged violations of international law that do not come within one of [its] exceptions." *Id.* at 436. And the FSIA does not provide for an exception to foreign sovereign immunity for claims alleging violations of *jus*

*cogens* norms. *See, e.g.*, *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243-44 (2d Cir. 1996); *Sampson v. Federal Republic of Germany*, 250 F.3d 1145, 1155-56 (7th Cir. 2001); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 704, 718-19 (9th Cir. 1992); *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1168 (D.C. Cir. 1994). It would make little sense for federal courts to disregard the sovereign immunity of the United States on the basis of an alleged *jus cogens* violation when a similar lawsuit against a foreign state would be barred by the FSIA. *Cf. Saleh v. Bush*, 848 F.3d 880, 893 (9th Cir. 2017) (holding that claims alleging *jus cogens* violations against former federal officials were barred by federal official immunity because it should not be easier to override federal official immunity than foreign sovereign immunity).

The circumstances in which the district court was willing to find an implied waiver illustrate the court's sharp deviation from precedent. For example, the court suggested that the United States impliedly waived sovereign immunity by becoming a party to the Convention Against Torture. JA3992. But that treaty does not require parties to allow lawsuits against themselves in their own courts. Moreover, the

Convention is not a self-executing treaty.  *Mironescu v. Costner*, 480

F.3d 664, 666-67 (4th Cir. 2007).  And Congress did not expressly waive

the United States' sovereign immunity for claims alleging *jus cogens*

violations when it implemented the Convention in domestic law.  *See*

Pub. L. No. 105-277, div. G, 112 Stat. 2681, 2681-761 (1998).

The court also suggested that the United States impliedly waived

sovereign immunity in U.S. courts "by joining the community of nations

and accepting the law of nations."  JA3987.  In other words, the court

concluded that the United States has forever waived sovereign

immunity merely by existing as a country.  That analysis is fatally

flawed.

### C.    *Jus Cogens* Norms Do Not, of Their Own Force, Create Rights and Obligations Enforceable in United States Courts.

Because Congress has never enacted a statute expressly waiving

the United States' sovereign immunity for claims alleging *jus cogens*

violations, this Court may affirm the dismissal of CACI's third-party

claims against the United States without reviewing the district court's

analysis of international law.  If the Court undertakes such a review,

however, it should reject the district court's mistaken contention that

*jus cogens* norms are, of their own force, "binding on the federal government and enforceable in the federal courts." JA3985.

International law does not itself necessarily create legal rights or obligations enforceable in United States courts. "[N]ot all international law obligations automatically constitute binding federal law enforceable in United States courts." *Medellín v. Texas*, 552 U.S. 491, 504 (2008). That is why non-self-executing treaties are not judicially enforceable by domestic courts in the absence of implementing legislation. *Id.* at 520-21. Even self-executing treaties that create individual rights do not necessarily create corresponding remedies as a matter of United States domestic law. "[T]he background presumption is that international agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." *Id.* at 506 n.3 (alteration and quotation marks omitted); *see Sanchez-Llamas v. Oregon*, 548 U.S. 331, 343-50 (2006) (holding that an alleged treaty violation does not entitle a defendant in a domestic criminal prosecution to suppression of evidence).

These principles apply equally to *jus cogens* norms—that is, those norms of "customary international law" that enjoy the "highest status

within international law." *Committee of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 940 (D.C. Cir. 1988). "[C]ustomary international law is not a source of judicially enforceable private rights in the absence of a statute conferring jurisdiction over such claims." *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010); *see Igartúa-De La Rosa v. United States*, 417 F.3d 145, 151 (1st Cir. 2005) (en banc) (rejecting a claim under customary international law seeking judicial enforcement of a right to vote in the United States).[7]  Accordingly, *jus cogens* norms do not themselves waive the United States' sovereign immunity as a matter of domestic law.

In concluding otherwise, the district court emphasized "the basic axiom that where there is a right, there must be a remedy." JA3985. That principle does not resolve the question whether international law is enforceable domestically of its own force.  Even the ATS, which

---

[7] The academic community has debated the extent to which international law is distinct from or might be incorporated in the domestic law of the United States, referred to as dualist and monist (or internationalist) views, respectively. *See, e.g.*, Curtis A. Bradley, *Breard, Our Dualist Constitution, and the Internationalist Conception*, 51 Stan. L. Rev. 529 (1999).  But "[n]otwithstanding academic claims to the contrary, the U.S. approach to international law has been and continues to be fundamentally dualist." *Id.* at 531.

provides an express statutory basis to look to customary international law in certain circumstances, does not authorize lawsuits to vindicate every conceivable norm of customary international law. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 720, 728 (2004) (explaining that the ATS "furnish[es] jurisdiction for a relatively modest set of actions alleging violations of the law of nations" and emphasizing the need "for great caution in adapting the law of nations to private rights"); *accord Jesner v. Arab Bank, PLC*, 584 U.S. 241, 272 (2018) (emphasizing that the ATS "provide[s] a federal remedy for a narrow category of international-law violations committed by individuals" and declining to imply a "similar remedy . . . against foreign corporations"). Rather, international law enters into domestic law primarily through an affirmative act of the political branches. *See Jesner*, 584 U.S. at 272-74 ("[The] considerations that must shape and instruct the formulation of principles of international and domestic law are matters that the political branches are in the better position to define and articulate."). To reiterate, the political branches have taken no affirmative act to authorize plaintiffs to sue the United States for alleged *jus cogens* violations in domestic courts.

That *jus cogens* norms enjoy the highest status within international law, JA3992, does not alter the analysis. Such norms "prevail over and invalidate international agreements and other rules of international law in conflict with them." *Siderman de Blake*, 965 F.2d at 715-16 (quotation marks omitted). But not even the strongest norm of international law operates as "a self-executing code that trumps domestic law whenever the two conflict." *United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991). The district court's contrary conclusion "misconceives the role of judges as appliers of international law and as participants in the federal system." *See id.* Domestic courts must "enforce the Constitution, laws, and treaties of the United States, not to conform the law of the land to norms of customary international law." *Id.*; *see United States v. Yousef*, 327 F.3d 56, 91 (2d Cir. 2003). Thus, even if individuals have a right to assert *jus cogens* norms against governments as a matter of international law (as the district court asserted without citation, JA3985), the existence of such a right would not by itself establish the judicial enforceability of that right in United States courts as a matter of domestic law.

## II. Alternatively, The District Court's Entry Of Summary Judgment Against CACI Should Be Affirmed.

Even if this Court holds that CACI's third-party claims against the United States are not barred by sovereign immunity, the decision below should be affirmed because, as the district court concluded, CACI and the United States have already settled all claims and disputes arising from the task orders at issue. JA4007-4011.

In 2007, CACI agreed to accept $200,000 from the United States as "full and final payment, settlement, and accord and satisfaction of all claims and disputes by [the U.S. Department of the Interior] and CACI arising out of or related to" Task Orders 35 and 71—the contracts under which CACI performed services at, and supplied personnel to, the Abu Ghraib prison. JA3738. The terms of this settlement are simple, broad, and unambiguous. They evince "an intent to make an ending of every matter arising under or by virtue of the contract." *See United States v. William Cramp & Sons Ship & Engine Bldg. Co.*, 206 U.S. 118, 128 (1907). "Stipulations of this kind are not to be shorn of their efficiency by any narrow, technical, and close construction." *Id.*

The settlement clearly covers CACI's third-party claims against the United States, which seek compensation for any liability CACI

might have to plaintiffs.  Plaintiffs allege that CACI "conspir[ed] with military personnel to inflict torture or cruel, inhuman, or degrading treatment on detainees . . . that resulted in [them] being tortured or subjected to cruel, inhuman, or degrading treatment."  *See* JA6399-6404 (verdict forms).  CACI's third-party complaint recognizes that plaintiffs' claims "aris[e] out of CACI['s] . . . performance of its contract[s]." JA561.  The complaint further recognizes that CACI's personnel were present at Abu Ghraib prison because "the United States issued task orders . . . whereby CACI . . . provided civilian interrogators to the United States military in order to augment the military's interrogation force in Iraq."  JA552.  Because CACI's third-party claims arise under or relate to Task Orders 35 and 71, they are barred by the settlement.

CACI's rejoinders lack merit.  First, CACI argues (Br. 56) that the settlement agreement only covers claims between CACI and the U.S. Department of the Interior.  CACI forfeited this argument by failing to raise it in district court.  *See generally* Dkt. No. 1159 (CACI opposition to United States' motion for summary judgment on third-party complaint); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) (holding that, "[a]bsent exceptional circumstances," this

Court does not "consider issues raised for the first time on appeal" (quotation marks omitted)). In any event, the argument lacks merit because the Department administered the task orders on behalf of the United States. Indeed, both task orders are between CACI and the United States, as evinced by the fact that both were signed by a federal contracting officer in the name of the United States. JA8021 (Task Order 35); JA8070 (Task Order 71); *see* 48 C.F.R. § 4.101 ("Only contracting officers shall sign contracts on behalf of the United States."). CACI's third-party complaint itself acknowledges that it "provided civilian interrogators under contract with the *United States*." JA550 (emphasis added).

Second, CACI argues (Br. 56-57) that the terms "arise under" and "relate to" must be construed to require a "significant relationship" between the settled claims and the two task orders. CACI derives this construction from cases holding that "an arbitration clause encompassing all disputes 'arising out of or relating to' a contract" covers only those disputes "having a significant relationship to the contract." *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) (quotation marks omitted). CACI has failed to cite any

decision of this Court extending the reasoning of those cases to contracts that do not involve arbitration. Nor would such an extension be appropriate. Generally speaking, "clear and unambiguous" terms in contracts with the federal government "must be given their plain and ordinary meaning." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quotation marks omitted); *see Slattery v. Department of Justice*, 590 F.3d 1345, 1347 (Fed. Cir. 2010) ("[W]hen a contract's words and meaning are unambiguous, its terms are not subject to variation."). And this Court has recognized that its significant-relationship gloss on the terms "arising out of or relating to" in arbitration contracts "appears to be at odds" with the terms' plain meaning. *Schmidt*, 445 F.3d at 768 n.5; *see In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 348 (4th Cir. 2014) (noting that the term "arising out of" usually "denotes *any* causal connection" (emphasis in original) (alteration and quotation marks omitted)).

Finally, CACI argues (Br. 57) that the settlement does not clearly extend to claims arising after the date of the agreement and claims involving alleged violations of *jus cogens* norms. But the settlement expressly reaches such claims because it applies to "*all* claims and

disputes" arising from Task Orders 35 and 71.  JA3738 (emphasis added); *see All*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/all (last visited May 1, 2025) (defining "all" as "any whatever" and "every"); *accord United States v. Serafini*, 826 F.3d 146, 150 (4th Cir. 2016) ("The use of the word 'all' as a modifier suggests an expansive meaning because 'all' is a term of great breadth." (alterations and quotation marks omitted)).  By the time the settlement was concluded, CACI was well aware that the events at Abu Ghraib "were highly likely to result in litigation," JA3742, and had already been named as a defendant in a class-action lawsuit, JA3762, JA3767.  Yet CACI nevertheless agreed to settle "all claims and disputes" arising from its Abu Ghraib contracts.  CACI's belated regrets do not justify rewriting the settlement's unambiguous text.

# CONCLUSION

For these reasons, this Court should affirm the dismissal of CACI's third-party claims against the United States for want of subject-matter jurisdiction. To the extent the Court reaches the merits, the grant of summary judgment to the government should be affirmed.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
ERIK S. SIEBERT
  *United States Attorney*
SHARON SWINGLE

 */s/ Michael Shih*
MICHAEL SHIH
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7268*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-6880*
  *michael.shih@usdoj.gov*

May 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,688 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Michael Shih*
MICHAEL SHIH