# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

SUHAIL NAJIM ABDULLAH AL SHIMARI,
*et al.*,

     *Plaintiffs-Appellees*,

No. 25-1043

     v.

CACI PREMIER TECHNOLOGY, INC.,

     *Defendant-Appellant.*

_____

### PLAINTIFFS-APPELLEES' OPPOSITION TO APPELLANT'S MOTION TO HOLD IN ABEYANCE ITS PETITION FOR REHEARING OR FOR REHEARING EN BANC

In response to this Court's order of April 24, 2026, Plaintiffs-Appellees Suhail Al Shimari, Salah Al-Ejaili, and Asa'ad Al-Zuba'e (collectively "Plaintiffs"), by and through the undersigned counsel, respectfully oppose Defendant-Appellant CACI Premier Technology, Inc.'s ("CACI's") motion to hold in abeyance its petition for rehearing after a Panel of this Court rejected all of CACI's challenges to the jury's verdict in favor of Plaintiffs. ECF Nos. 109 ("Petition"), 110 ("Motion").

### INTRODUCTION

Over the course of more than fifteen years, this Court has conscientiously navigated six appeals involving a number of important substantive and procedural

1

questions governing this litigation and, in so doing alongside the district court, vindicated the authority and competency of the federal courts to adjudicate cases brought under the Alien Tort Statute ("ATS"). Through its abeyance motion, CACI seeks to bypass the regularized standards and procedures of this Court in order to delay the otherwise routine consideration of its petition for rehearing en banc based on pure speculation that *Cisco Systems, Inc. v. Doe I*, No. 24-856 ("*Cisco*"), a case pending before the Supreme Court, will mandate dismissal of this case. CACI has made such chicken-little arguments before. But the Panel considered—and rejected—CACI's suggestion that *Cisco*, which involves an entirely different legal question on facts that elicit the opposite foreign relations considerations to those here, would usher in a sea change in ATS jurisprudence in deciding CACI's appeal. *See Al Shimari v. CACI Premier Tech., Inc.*, 170 F.4th 162, 182 n.10 (4th Cir. 2026) ("*Al Shimari VI*") ("[W]e are not persuaded by this or any other arguments in the government's brief in *Cisco*.").

Moreover, by requesting that the Court delay consideration of its petition, CACI tacitly admits that it lacks sufficiently persuasive grounds under the *actual* standards governing en banc consideration to convince a majority of the Court that there are *presently* grounds to revisit the Panel's thorough rejection of CACI's blunderbuss appeal. Instead, CACI urges the Court to bypass its regular procedure and the judicial system's interest in finality based on speculation that the Supreme

2

Court will go beyond the limited questions presented in *Cisco* and issue a far-reaching ruling that significantly impacts this case. This Court should be skeptical of CACI's pronouncement of such a "watershed" moment, which it has asserted repeatedly in this litigation. CACI has regularly used such pronouncements as a tactic to delay this case, in the trial court and on appeal, in what can be fairly called an abuse of judicial process. This Court should not permit further delay, especially where, as here, this Court's Local Rules explicitly prohibit using the en banc process to delay issuance of the mandate. *See* Local Rule 40(a).

Denying this motion produces no unfairness to CACI, as it retains the option to follow the ordinary appellate course and seek review by the Supreme Court, if it believes the Supreme Court's eventual decision in *Cisco* warrants such relief. This is the process any litigant can and must follow. Denial also is appropriate because granting an abeyance would enact continuing prejudice to Plaintiffs who have litigated for eighteen years against CACI's scorched earth litigation practice, and achieved vindication from a federal jury.

## BACKGROUND

After four merits decisions from this Court (including one en banc decision in Plaintiffs' favor), two unsuccessful interlocutory appeals by CACI, CACI's unsuccessful petition for *certiorari*, and two jury trials, CACI has finally been held accountable for its participation in a conspiracy to inflict torture and cruel, inhuman

3

and degrading treatment ("CIDT") on Abu Ghraib detainees, including the Plaintiffs.[1]  Now CACI again seeks to delay the justice and finality that a jury has determined, and this Court affirmed, is due to Plaintiffs.

After invading Iraq and deposing Saddam Hussein in 2003, the United States established a new temporary governing body in Iraq, which exercised plenary U.S. legal and political control over Iraq, including over Abu Ghraib, a prison facility near Baghdad where thousands of Iraqi civilians, including Plaintiffs, were detained. The United States executed a contract with CACI, a Virginia-based company, to supply civilians to provide interrogation services at Abu Ghraib.  CACI interrogators instructed military personnel at Abu Ghraib to "soften up" detainees for interrogations, causing the infliction of "numerous incidents of sadistic, blatant, and wanton criminal abuses" on detainees at Abu Ghraib, JA8183, and producing worldwide shock and horror when images of U.S. civilians and military personnel torturing Iraqis came to light.

Plaintiffs are three Iraqi civilians who were detained and suffered traumatic and degrading torture and abuse at Abu Ghraib prison in Iraq during this period. After five days of trial, with testimony from more than 20 witnesses—including the

---

[1] That Plaintiffs were tortured and abused at Abu Ghraib as a result of a conspiracy orchestrated by CACI interrogators is not merely "alleged" as CACI would have it. Motion at 3.  Rather, it is a proven fact.

investigating Army Generals, Army Military Police ("MPs") who conspired with CACI to abuse detainees, several CACI interrogators (including one who raised an alarm on abuse), and CACI corporate officers, as well as Plaintiffs, who suffered severe physical and mental harm as a result of the conspiracy—the jury unanimously found CACI liable of conspiring to commit torture and CIDT. After the district court rejected CACI's motions for judgment as a matter of law and for a new trial, CACI appealed to this Court , raising ten distinct issues—including the argument it raises here that Plaintiffs' claims are not cognizable under the ATS—and challenging sixteen orders of the district court.

While its appeal in this Court was pending, CACI raised to the Panel's attention the very issues at the heart of its motion for abeyance: CACI filed two letters pursuant to Federal Rule of Appellate Procedure 28(j) arguing that the pending *Cisco* compelled this Court to categorically reject Plaintiffs' ATS claims. ECF Nos. 102, 103.[2]  In response, Plaintiffs noted that, unlike the *aiding and abetting*

---

[2] In its first notice of supplemental authority, CACI argued that the United States's *amicus* brief, which asked the Supreme Court to grant *certiorari* in *Cisco,* warranted rejection of Plaintiffs' ATS claims, even though Cisco involved different claims arising out of different facts brought under multiple statutes.  ECF No. 102 at 1-2.  In its second notice of supplemental authority, CACI speculated that the Supreme Court's decision to grant *certiorari* in *Cisco* meant it was going to overturn decades of ATS precedent and limit ATS claims in a way that would bar ATS liability for conspiracy claims, even though *Cisco* does not involve a claim of conspiracy.  ECF No. 103 at 1.

claims raised in *Cisco*, the *Al Shimari* jury found CACI liable for *conspiring* with U.S. miliary personnel to inflict torture and CIDT on Plaintiffs. ECF No. 104 at 1. Moreover, the foreign relations concerns in *Cisco*, which questions the acts of China, are not present here. To the contrary, the *Al Shimari* jury's verdict advances Congress' purpose in enacting the ATS, which was "to promote harmony in international relations" and avoid "diplomatic strife" that might arise in the absence of a remedy for foreign victims of international law violations attributable to the United States. *Id.* at 2 (quoting *Jesner v. Arab Bank PLC*, 584 U.S. 241, 270 (2018); *id.* at 274 (Alito, J. concurring)). And finally, Plaintiffs highlighted that decades of Supreme Court precedent confirm that courts may recognize common-law causes of action "for claims based on the present-day law of nations"—such as torture—in addition to the three "historical paradigms". *Id.* (quoting *Jesner*, 584 U.S. at 256).

On March 12, 2026, this Court affirmed the *Al Shimari* jury's verdict. In an 86-page Opinion, the Panel majority thoroughly considered and rejected each of CACI's arguments, including its claim that Plaintiffs' claims are not cognizable under the ATS, The Panel held that "conspiracy to commit torture or CIDT violates 'norm[s] of customary international law so well defined as to support the creation of a federal remedy.'" *Al Shimari VI*, 170 F.4th at 182 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725 (2004)). The Panel further rejected the notion that *Cisco*

would determine the outcome of this case.  In doing so, the Panel considered and rejected the very arguments CACI raises in its abeyance motion.  *Id.* at 182 n.10.

### ARGUMENT

CACI's latest attempt to bypass this Court's regular process and delay finality in this case—by way of its motion to hold its just-filed petition for rehearing in abeyance in the speculative hope that the Supreme Court will finally give CACI some relief—should be rejected for at least four reasons.

*First*, CACI's request is contrary to the procedures governing this Court's consideration of petitions for rehearing en banc.  *See* Local Rule 40(b); *see also* Local Rule 40(a) ("Although petitions for rehearing are filed in a great many cases, few are granted.").  Indeed, that CACI moved to hold in abeyance its petition for rehearing immediately after filing strongly suggests that CACI lacked good reason for rehearing in the first place.  The Court is authorized to grant rehearing en banc if a panel decision is *presently* in conflict with authority of this Court or of existing Supreme Court decisions.  Fed. R. App. P. 40(b); *see also* Local Rule 40(b).  Yet, CACI's request is to pause its own rehearing petition in order to allow for a *possible* development in *another* case involving different facts and legal issues to take place *sometime* in the future that *might* ultimately prove the Panel opinion incorrect and then justify rehearing in this case.  *See* Motion 4.  In so doing, CACI reveals that it had no meritorious grounds to ask the Court to rehear this case when it filed the

7

Petition.  The governing en banc standards look to the *present* incorrectness of a panel opinion, and not some looming possibility that the law might change in the future.  Fed. R. App. P. 40(b); Local Rule 40(b).[3]

What's more, CACI's motion for abeyance is fundamentally at odds with the Circuit Rules, which specifically prohibit seeking rehearing for purposes of delay. *See* Local Rule 40(a) ("Filing a petition solely for purposes of delay or in order merely to reargue the case is an abuse of privilege.").  Seeking to prolong this case appears to have been CACI's strategic approach over the past decade.[4]  As described below, should the Court deny CACI's request for abeyance and deny its en banc petition, CACI can resort to petition for Supreme Court review, in the same manner available to any other litigant.

---

[3] To be sure, en banc review is also permitted where "the proceeding involves one or more questions of exceptional importance." Fed. R. App. P. 40(b)(2)(D); Local Rule 40(b)(iv).  But that standard also looks to the present state of the law, and does not invite speculation that a question may later become exceptionally important.

[4] In solipsistic fashion, CACI seeks to portray its motion to hold in abeyance its own petition for rehearing as some sort of necessity.  *See* Motion at 1-2, n.1.  It is not.  As explained above, CACI's effort to hold its request for rehearing cannot be reconciled with this Court's local rules prohibiting the seeking of rehearing for purposes of delay.  It is also worth noting that CACI has already effectively been given *31 additional* days to seek rehearing on top of the standard 14 days, thanks to CACI electing to appeal its unsuccessful third-party claims against the United States, to which CACI paid little mind in briefing or argument.  *See* Fed. R. App. P. 40(d)(1).  This is on top of delays CACI sought in briefing the merits of the appeal. *See* ECF Nos. 58, 60.

*Second*, CACI's reason for seeking to pause its own rehearing petition—that a case involving different issues that is before the Supreme Court *may possibly* impact this case—rests on speculation and guesswork. The actual question presented in *Cisco* is a narrow one, pertaining only to the aiding and abetting claims brought by the Respondents under the ATS and the Torture Victim Protection Act. Here, no aiding and abetting claim remains. The *Al Shimari* jury returned a verdict finding that CACI conspired with U.S. military police to torture and mistreat detainees at Abu Ghraib prison by directing MPs to "soften them up" for interrogations, resulting in Plaintiffs' torture and mistreatment. Moreover, the foreign relations concerns in *Cisco* are not present here. *Cisco* ultimately turns on a foreign sovereign's acts—China—that allegedly occurred in that foreign sovereign's territory against its own citizens. *Al Shimari* concerns the conduct of a *U.S.* corporation and its *U.S.*-citizen employees at a *U.S.*-run prison in *U.S.*-occupied territory, where the *U.S.* suspended Iraqi law and mandated application of *U.S.* law, and where its interrogators (operating under a *U.S.* contract) instructed *U.S.* MPs to torture and abuse Iraqi detainees. Whereas the aiding and abetting theory in *Cisco* ultimately questions a foreign sovereign's acts, which the Solicitor General argues poses a risk to U.S. foreign policy and threatens to increase tensions in U.S. foreign relations, the *Al Shimari* jury's verdict advances Congress' purpose in enacting the ATS, which was "to promote harmony in international relations" and avoid

"diplomatic strife" that might arise in the absence of a remedy for foreign victims of international law violations attributable to the United States. *Jesner*, 584 U.S. at 270; *id*. at 274 (Alito, J. concurring); *see also Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 115 (2013); *Al Shimari VI*, 170 F.4th at 182 n. 10 (rejecting significance of CACI's reliance on *Cisco*, by emphasizing materially different foreign relations considerations between *Cisco* and *Al Shimari*).

Now CACI speculates that not only will the Supreme Court reach the ATS aiding and abetting question in *Cisco*, but also it will decide *Cisco* on a much broader basis and in a way that benefits CACI.[5]  Motion 1, 4-6.  As a preliminary matter, such a broad ruling would constitute a break from the Supreme Court's carefully calibrated approach to the ATS reflected in the recent *Kiobel, Jesner* and *Nestlé* cases—decisions that rejected the maximalist positions CACI speculates the Court will now adopt.  More fundamentally, CACI's sheer supposition does not justify interrupting this case's progress through the full appellate process.  There is often a

---

[5] There is good reason to doubt this.  The Supreme Court has consistently stated "in certain narrow circumstances courts may recognize a common-law cause of action for claims based on the present-day law of nations, *in addition to* the 'historical paradigms familiar when [the ATS] was enacted.'"  *Jesner*, 584 U.S. at 256 (emphasis added) (quoting *Sosa*, 542 U.S. at 732); *see also Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 631 (2021) (Thomas, J.) ("[O]ur precedents have stated that courts may exercise common-law authority under this statute to create private rights of action in very limited circumstances."); *Kiobel*, 569 U.S. at 116 (the ATS "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law"); *Sosa*, 542 U.S. at 724, 731-32.

possibility that a Supreme Court decision might issue while a case is pending on appeal. But if every case was put on hold because a pending Supreme Court case might be decided in a way that possibly impacted them, finality would be a near-impossible destination to reach; the judicial process would be endless. At bottom, *if* the Supreme Court issues a decision in *Cisco* that CACI thinks positively impacts it, then CACI has a method by which it can seek further review of this Court's decision—the same method every other litigant is required to use—by filing a petition for *certiorari*.

*Third*, CACI's prior predictions regarding the dispositive impact of Supreme Court rulings have fallen flat over and over again. Indeed, following every Supreme Court pronouncement on the ATS during the life of this case, CACI has boldly asserted they doom the distinctive claims in this case.

- Following the Supreme Court's 2013 decision in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), CACI argued the case produced "a bright line test that forecloses ATS claims here." *Al Shimari, et al. v. CACI Premier Technology, Inc.*, No. 1:08-0827-LMB-JFA ("E.D. Va. Dkt.") Dkt. No. 355 at 1. This Court disagreed. *See Al Shimari v. CACI Premier Tech.,* 758 F.3d 516, 520 (4th Cir. 2014).

- Following the Supreme Court's 2018 decision in *Jesner v. Arab Bank PLC*, 584 U.S. 241 (2018), CACI proclaimed it "a watershed decision that significantly amplifies and refines the analysis courts are required to conduct to determine whether there is subject-matter jurisdiction over a claim under the Alien Tort Statute." E.D. Va. Dkt. No. 812 at 1. The district court and this Court rejected CACI's supposition. *See Al*

*Shimari v. CACI Premier Tech.,*320 F. Supp. 3d 781, 782 (E.D. Va. 2018); *Al Shimari VI*, 170 F.4th at 184.

- Following the Supreme Court's 2021 decision in *Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (2021), CACI argued that this decision "requires dismissal of this case for lack of subject-matter jurisdiction." E.D. Va. Dkt. 1332 at 1. The district court and this Court rejected this overbroad reading of *Nestlé* based on the particular factual record developed in this case and proven at trial. *See Al Shimari v. CACI Premier Tech.*, 684 F. Supp. 3d 481, 492-503 (E.D. Va. 2023); *see also id*. at 492 ("CACI overstates *Nestlé*'s impact on *Kiobel*'s 'touch and concern' standard"); *Al Shimari VI*, 170 F.4th at 178-82.

CACI is crying wolf again. This Court should not alter its normal procedures based on CACI's "game-over" speculation here.

Indeed, in several recent cases the Supreme Court has issued a decision that contradicts positions advanced by CACI throughout this litigation. For example, in *Hencly v. Fluor Corp*., upon which CACI primarily rested its preemption argument, the Supreme Court confirmed that CACI's position as to "battlefield preemption"— which was rejected by the Panel majority too—was wrong. As the Supreme Court held, where, as here, the federal government neither ordered nor authorized a contractor's challenged conduct, state tort claims are not preempted by federal law or the Constitution. *Hencely v. Fluor Corp., et al*., Slip Op. at 16, 608 U. S. ____ (2026). The Supreme Court thus rejected CACI's oft-repeated argument that damages actions arising in the context of war are barred. *Id.* at 13 ("The assignment of [war powers] powers to Congress and the Executive has never been understood

12

to bar all war-related tort suits. To the contrary, barring other statutory or constitutional considerations, plaintiffs have been able to enforce their legal rights even when they are violated during war."). Another example is *Geo Group, Inc. v. Menocal*—the subject of another of CACI's notices of supplemental authority, ECF No. 105—in which the Supreme Court issued an opinion that foreclosed once and for all CACI's repeated insistence that it was entitled to derivative sovereign immunity from suit, confirming that a "*Yearsley*" defense "protects a contractor only when—and only because—it has acted lawfully," 607 U.S. ____, 146 S. Ct. 774, 784 (2026).

*Fourth*, CACI's motion to disrupt this Court's ordinary procedures is part and parcel of CACI's abuse of process in this case, both at the trial court level and at the appellate level.[6] Plaintiffs have brought CACI's tactics to the Court's attention before, most recently in opposing CACI's *second* petition for a writ of mandamus in 2023. *See In re: CACI Premier Technology, Inc.*, No. 19-1238 (4th Cir.), Dkt. No. 11 (Sept. 25, 2023). There, Plaintiffs recounted CACI's unprincipled use of the appellate process to delay litigation, including CACI's unsuccessful 2009

---

[6] *See also Al Shimari VI*, 170 F.4th at 195 n.19 (observing that CACI repeatedly mispresented case holdings so as to "benefit[] its position," and reflecting that the Court is "especially trouble[ed] because this is not the only instance where CACI misrepresents authority to a self-serving result"); *see also id.* at 208 n.30.

interlocutory appeal, 2019 mandamus petition, and 2019 interlocutory appeal,[7] each of which was rejected by this Court as improper and delayed resolution of this litigation by years. As with CACI's prior abuses of the appellate process, CACI's second, 2023 mandamus petition was likewise rejected—in a one-page order by a unanimous panel of this Court. No. 23-1932 (4th Cir.), Dkt. No. 13 (Nov. 2, 2023) (Floyd, Thacker, Quattlebaum, JJ.). More than 15 years after CACI first invoked the appellate process to delay Plaintiffs' quest for finality, CACI's latest motion for abeyance is yet another instance of CACI's abuse of this Court's procedures for strategic delay.

Plaintiffs recognize the right of a defendant to press its case, but CACI's actions in this case speak volumes. Indeed, this track record reveals CACI's ongoing strategy to push off final resolution in this case, especially as it rests on CACI's same overconfident speculation about the import of Supreme Court decision-making, including in a case raising different questions and resting on materially different factual circumstances. Having sought to quelch judicial efficiency at every turn in

---

[7] In fact, CACI's 2019 interlocutory appeal was unambiguously foreclosed by this Court's 2011 en banc ruling that rejected the same grounds raised by CACI in its interlocutory appeal, and thus summarily dismissed by this Court. *See Al Shimari v. CACI Premier Tech., Inc.*, 775 Fed. App'x 758 (4th Cir. 2019).

this litigation it is deeply self-serving that in its latest motion seeking to put this case on hold, CACI is arguing that judicial efficiency will somehow be served.[8]

\* \* \*

CACI would not be prejudiced if its abeyance request was rejected (as it should be). Once CACI's petition for rehearing is decided by this Court (and it should be rejected), CACI can still choose to seek review in the Supreme Court, as is the proper recourse following the customary process governing en banc consideration. By contrast, Plaintiffs—who have fought for this jury verdict for nearly two decades—would be negatively impacted should CACI's request for abeyance be granted, because the prospect of finality would be pushed off yet again.

Plaintiffs respectfully submit that CACI's motion to hold in abeyance its own petition for rehearing be denied.

April 28, 2026

Respectfully submitted,

*/s/ Michael F. Buchanan*

Baher Azmy
Katherine Gallagher
CENTER FOR CONSTITUTIONAL

---

[8] It is also worth recalling that CACI initially sought to expedite this appeal. *See* ECF Nos. 7; 110 at 7, n. 9. Since doing so, and as its own interests dictated, CACI has reversed itself and repeatedly sought ways to draw out this appeal, such as by seeking extensions of time and even to suspend briefing schedules. *See, e.g.*, ECF Nos. 74; 79. Like its other attempts, CACI's latest request to hold this case in abeyance flatly contradicts CACI's prior position, and represents the latest of CACI's efforts to delay a final judgment enforcing the jury's verdict against it.

RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Michael F. Buchanan
Andrew Haddad
Alexandra Mahler-Haug
James Mayer
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
mfbuchanan@pbwt.com

# CERTIFICATE OF SERVICE

I certify that on April 28, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Michael F. Buchanan*

Michael F. Buchanan