**No. 25-1043**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**SUHAIL NAJIM ABDULLAH AL SHIMARI; SALAH HASAN NUSAIF JASIM AL-EJAILI; ASA'AD HAMZA HANFOOSH AL-ZUBA'E,**

Plaintiffs-Appellees,

**and**

**TAHA YASEEN ARRAQ RASHID; SA'AD HAMZA HANTOOSH AL-ZUBA'E,**

Plaintiffs

**v.**

**CACI PREMIER TECHNOLOGY, INC.,**

Defendant and Third-Party Plaintiff – Appellant,

**and**

**TIMOTHY DUGAN; CACI INTERNATIONAL INC; L-3 SERVICES, INC.,**

Defendants,

**and**

**UNITED STATES OF AMERICA; JOHN DOES 1-60,**

Third-Party Defendants - Appellees.

_____

On Appeal from the United States District Court
for the Eastern District of Virginia, Case No. 1:08-cv-00827

_____

## SUPPLEMENTAL BRIEF OF APPELLANT
## CACI PREMIER TECHNOLOGY, INC.

_____

John F. O'Connor
Linda C. Bailey
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
joconnor@steptoe.com
lbailey@steptoe.com

Nina J. Ginsberg
GREENSPUN SHAPIRO
GINSBERG & YANG, P.C.
3955 Chain Bridge Road, 2nd Floor
Fairfax, Virginia 22030
(703) 352-0100 – telephone
njg@greenspunlaw.com

*Counsel for Appellant CACI Premier
Technology, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT...................................................................................................3

    A.   *Cisco* Prohibits Federal Courts from Creating Any ATS Causes of Action ...................................................................................................3

    B.   The ATS Cause of Action Corresponding to Piracy is Piracy, Not Conspiracy to Commit Torture or CIDT.................................................4

    C.   Plaintiffs Did Not and Cannot State Claims for Piracy ......................10

    D.   *Cisco* Precludes Plaintiffs' Foreign Policy Argument ........................13

III. CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Premier Tech., Inc.*,
170 F.4th 162 (4th Cir. 2026) ....................................................................*passim*

*Cisco Systems, Inc. v. Doe*,
609 U.S. ___ (June 23, 2026) ......................................................................*passim*

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018)..............................................................................................8

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)..............................................................................................8

*Nuclear Regul. Comm'n. v. Texas*,
605 U.S. 665 (2025)..............................................................................................2

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)....................................................................................*passim*

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)..............................................................................................14

*United States v. Ali*,
718 F.3d 929 (D.C. Cir. 2013).............................................................................9

*United States v. Dire*,
680 F.3d 446 (4th Cir. 2012) .......................................................................11, 12

*United States v. Smith*,
18 U.S. (5 Wheat.) 153 (1820) ..........................................................................11

**Statutes**

Anti-Torture Act, 18 U.S.C. § 2340(A).................................................................13

Torture Victim Protection Act, 28 U.S.C. § 1350 note ......................................9, 13

**Other Authorities**

Convention Against Torture and Other Cruel, Inhuman or Degrading
Treatment or Punishment, arts. 1, 16, *opened for signature* Dec.
10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered
into force June 26, 1987) ...............................................................................12

Geneva Convention on the High Seas, art. 15, *opened for signature*
Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 11 (entered into force
Sept. 30, 1962) ......................................................................................12, 13

U.S. *Cisco* Br., No. 24-856, 2026 WL 561002 (Feb. 25, 2026) .............................14

United Nations Convention on the Law of the Sea, art. 101, *opened
for signature* Dec. 10, 1982, 1833 U.N.T.S. 397 (entered into force
Nov. 16, 1994) .......................................................................................12, 13

# I.    INTRODUCTION

*Cisco Systems, Inc. v. Doe*, 609 U.S. ___ (June 23, 2026) (Exhibit A), establishes that the district court lacked subject-matter jurisdiction over Plaintiffs' claims against CACI Premier Technology, Inc. ("CACI"). The Court should grant rehearing, vacate the district court's judgment, and remand with instructions to dismiss for lack of jurisdiction.

The district court's judgment holds CACI vicariously liable for the co-conspirator liability of employees in Iraq who allegedly conspired with soldiers who tortured and inflicted cruel, inhuman, or degrading treatment ("CIDT") on detainees.[1] The panel majority held Plaintiffs' claims cognizable under the Alien Tort Statute ("ATS"), applying the two-step framework set forth in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). The panel majority held that conspiracy to commit torture and CIDT "violates norm[s] of customary international law so well defined as to support the creation of a federal remedy," and that separation-of-powers concerns did not "require[] the political branches to grant specific authority before … liability can be imposed." *Al Shimari v. CACI Premier Tech., Inc.*, 170 F.4th 162, 182, 184 (4th Cir. 2026) (internal quotations omitted) (omission and first alteration in original).

In dissent, Judge Quattlebaum concluded that Plaintiffs' claims cannot satisfy the "extremely strict" *Sosa* test. *Id.* at 221 n.6 (Quattlebaum, J., dissenting).

---

[1] Plaintiffs made no effort over the eighteen years of this case to identify in discovery the soldiers who abused them, and never sued those soldiers by name or pseudonymously.

Judge Quattlebaum also surveyed post-*Sosa* Supreme Court decisions and stated that "[i]f the Supreme Court really means federal courts should not create new causes of action under the ATS, I wish it'd say that directly." *Id.* (Quattlebaum, J., dissenting). In *Cisco*, the Supreme Court did exactly that.

*Cisco* prohibits courts from recognizing claims under the ATS beyond, perhaps, the three law-of-nations violations assumed to be in the First Congress's contemplation at the ATS's enactment—violation of safe conducts, infringements of the rights of ambassadors, and piracy ("the Blackstone Three"). *Cisco*, slip op. at 12. *Cisco* specifically holds that the primary law-of-nations violations on which Plaintiffs' secondary-liability claims rely—torture and CIDT—are unavailable absent a substantive cause of action enacted by Congress. *Id.* (rejecting secondary liability claims against Cisco because the underlying international law violations— including torture and CIDT—are not among the Blackstone Three).

With *Cisco* barring judicially-implied ATS claims other than the Blackstone Three, Plaintiffs pivot and argue that their claims are close enough to piracy to remain actionable. This is essentially a Hail Mary pass, and as the Supreme Court has observed, "in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n. v. Texas*, 605 U.S. 665, 681-82 (2025) (citation omitted). So too here. Being "like" pirates is not the same as *being* pirates, and *Cisco* grants lower courts no leeway to create new claims they conclude are like, similar to, or as reprehensible as piracy. *Cisco*, slip op. at 12 n.3 (holding "this far and no further" as to the Blackstone Three).

Moreover, had Plaintiffs asserted a piracy claim, it would have failed. Piracy must occur *on the high seas* and be committed by the crew or passengers of a *ship* acting for private ends and unaffiliated with any sovereign. Allegations of abuses by soldiers in a military-run prison in the Iraqi desert do not qualify. Dismissal is required.

## II. ARGUMENT

### A. *Cisco* Prohibits Federal Courts from Creating Any ATS Causes of Action

*Cisco* is expansive and unambiguous. The Court went beyond merely addressing claims that Cisco aided and abetted torture, extrajudicial killing, CIDT, and a host of other abhorrent conduct. The Court held that federal courts could not judicially imply *any* ATS claims other than, perhaps, the Blackstone Three. *Id.* at 12 (describing *Sosa* as "overly optimistic in its prediction that there might be a narrow class of cases in which courts may create ATS actions" and concluding "this class is a null set"); *id.* at 1 (courts' authority to create an ATS action is "nonexistent").[2]

*Cisco* explains that "[s]ince *Sosa* was decided, [the Court has] firmly committed to the view that judicially created causes of action offend the separation of powers in almost every circumstance" and noted that the Court has "virtually

---

[2] *Cisco* does not definitively hold that even the Blackstone Three torts are actionable, merely stating the Court is not disturbing *Sosa*'s "assumption that causes of action are available for torts corresponding to the Blackstone three." *Cisco*, slip op. at 12; *see also id.* at 11 n.4 (Sotomayor, J., dissenting).

eliminated the practice of fashioning them." *Cisco*, slip op. at 10; *id.* ("[W]hat *Sosa* made difficult, subsequent legal developments have made impossible"); *id.* ("In the ATS context, there will always be at least a 'single sound reason' to conclude that Congress might not want the judiciary to take the lead." (quoting *Egbert v. Boule*, 596 U.S. 482, 491 (2022)). Accordingly, the Supreme Court "close[d] the door that *Sosa* cracked to judicially created ATS liability." *Id.* at 12; *see also id.* at 11 ("We thus see no need to 'indulge the fiction' that creating new ATS causes of action is sometimes appropriate." (citation omitted)); *id.* at 11 n.2 (*Cisco* "[s]hut[s] off the possibility of additional ATS liability").

Without the benefit of *Cisco*, the panel majority held that the door remained cracked for judicial creation of new ATS claims. *Al Shimari*, 170 F.4th at 184. Indeed, the panel majority noted it was "[e]xpanding on the work of our sister circuits" in endorsing Plaintiffs' conspiracy claims. *Id.* at 182. With respect, the panel majority's approach is irreconcilable with *Cisco*'s holding that the class of available new ATS claims is a "null set," *Cisco*, slip op. at 12, and requires rehearing, vacatur of the district court's judgment, and dismissal.

**B.    The ATS Cause of Action Corresponding to Piracy is Piracy, Not Conspiracy to Commit Torture or CIDT**

Plaintiffs do not contend that their claims actually qualify as piracy. While conceding that *Cisco* "precludes the *creation* of a cause of action," Plaintiffs suggest courts retain wide berth to make *available* any tort claim, including the conspiracy claims against CACI, that they find akin, like, or commensurate with

piracy or the other Blackstone Three violations. Pl. Br. 15.[3] But *Cisco* leaves no room for analogies, penumbras, or "close enoughs." It expressly prohibits claim-creation or "availability" by comparison or analogy—full stop. *Cisco*, slip op. at 12 & n.3.

The ATS claim that corresponds to piracy is piracy, not a conspiracy claim emanating from alleged torture or CIDT. Arguing that courts can make "available" a claim based on its supposed similarity to piracy is just another way of saying courts can create ATS causes of action beyond the Blackstone Three, which *Cisco* unambiguously prohibits. *Cisco*, slip op. at 12 n.3.

*To start*, Plaintiffs' argument that torture and/or CIDT are the torts "corresponding" to piracy falters out of the gate because, if they were right, *Cisco* would have come out the other way. The plaintiffs in *Cisco* alleged that Cisco executives aided and abetted "violations of international law—namely *torture*; *cruel, inhuman, or degrading treatment*; forced labor; prolonged and arbitrary detention; crimes against humanity; extrajudicial killing; and forced disappearance." *Id.* at 6 (emphasis added). The Court holds that ATS claims for

---

[3] *See also* Pl. Br. 1 (arguing CACI's conduct was "commensurate with acts of piracy" (quoting *Al Shimari*, 170 F.4th at 178)); Pl. Br. 2 (places outside the jurisdiction of any sovereign are "like the high seas"); Pl. Br. 4 (suits against torturers are "like cases against pirates" because no sovereign would be offended by them); Pl. Br. 4 (torture is "akin to piracy" (quoting *Al Shimari*, 170 F.4th at 178)); Pl. Br. 5 (arguing CACI's conduct is [l]ike a pirate undertaking private acts of violence for personal gain or wanton cruelty"); Pl. Br. 5 (arguing that the relevant conduct occurred "in a place outside the jurisdiction and territory of any foreign sovereign that was akin to the high seas").

all of these proposed law-of-nations violations, including torture and CIDT, are unavailable in the absence of a statutory cause of action:

> What result for this case?  Cisco argues that the Ninth Circuit erred in holding that aiding-and-abetting liability exists under the ATS for the torts alleged by the plaintiffs.  Cisco is correct.  Courts cannot create new rights of action to remedy violations of international law, so there is necessarily no liability for aiding and abetting such violations.

*Id.* at 12.  If torture and CIDT are the torts "corresponding" to piracy, *Cisco* would have held that those torts are actionable and then determined whether secondary liability for those torts is available under the ATS.  Instead, *Cisco* rejects the plaintiffs' secondary liability claims *because* torture, CIDT, and the other primary torts alleged are "new rights of action" that courts have no authority to create.  *Id.*[4]

That holding forecloses Plaintiffs' claims here.  The panel majority expressly equated "aiding and abetting liability claims" under the ATS to the "conspiracy liability" claims in this case.  170 F.4th at 182.  As with the aiding-and-abetting claims rejected in *Cisco*, the fact that torture and CIDT are "new violations" that cannot be judicially implied bars claims for conspiring to commit those violations.

---

[4] Plaintiffs argue torture "is so egregious that it violates eighteenth century international law norms still preserved under the ATS in addition to those more modern," Pl. Br. 1, but have no explanation why torture and CIDT would remain actionable, despite *Cisco*'s rejection of them, while crimes against humanity, extrajudicial killing, and the other abhorrent conduct alleged in *Cisco* would not.

*Second*, Plaintiffs misapply *Cisco*'s statement that it was not revisiting *Sosa*'s "assumption that causes of action are available for torts corresponding to the Blackstone three." *Cisco*, slip op. at 12. In Plaintiffs' telling, the Court's use of "corresponding" means it remains open season for any claim a court concludes is analogous enough to the Blackstone Three. Pl. Br. 1, 15. *Cisco* does not permit that construction.

While Plaintiffs ignore it, the Court added a footnote at the end of the sentence on which Plaintiffs rely that explains exactly what ATS claims "correspond" to the Blackstone Three. As the Court explained:

> The dissent recruits the Blackstone three as support for judicial power to create ATS actions. If the Blackstone three, the dissent asks, then why not more? …. Under the prevailing jurisprudence of the time, *Sosa* said, such torts were understood to be "found or discovered" by courts rather than "made or created." 542 U.S., at 725. Offering examples, *Sosa* stated that offenses against ambassadors "appear[r] to have been" at top of mind, violations of safe conduct "were probably understood to be actionable," and "individual actions arising out of prize captures and piracy may well have also been contemplated." *Id.*, at 720. ***Those are the only ATS actions this Court has ever specifically mentioned***, and to the extent there has been reliance ***on the availability of those three actions***, we see no need to revisit them. But while we say "***this far and no further***," the dissent would go very far indeed.

*Cisco*, slip op. at 12 n.3 (emphasis added) (alteration in original). Thus, the Court makes clear that its reference to the "torts corresponding to the Blackstone three" means "those three actions" that were "specifically mentioned" in *Sosa* as possibly

7

contemplated at the time of ATS's enactment—offenses against ambassadors, violations of safe conduct, and piracy—"and no further." *Id.* Claims supposedly related to torture or CIDT are "further" and therefore cannot be judicially implied.

The *Cisco* dissent has the same understanding. While forcefully disagreeing with the result, the dissent acknowledges that *Cisco* "disclaims any future authority by any court to find additional causes of action in all cases to come, even though it declines to disturb the three implied causes of action previously recognized under the ATS." *Id.* at 10 (Sotomayor, J., dissenting).

*Third*, Plaintiffs' argument that courts may imply claims that are "akin," "like," or analogous to piracy, but which are not piracy, applies the *Sosa* claim-creation-by-analogy standard *Cisco* rejects. *Sosa* contemplated that there might be a narrow class of judicially-implied ATS claims "comparable to the features of the [Blackstone Three] 18th-century paradigms we have recognized." *Sosa*, 542 U.S. at 725. But *Cisco* holds that "*Sosa* was overly optimistic in its prediction" because "[i]n truth, this class is a null set." *Cisco*, slip op. at 12. Thus, *Cisco* "close[s] the door that *Sosa* cracked to judicially created ATS liability." *Id.* at 12; *see also id.* at 7 (ATS "bespoke a grant of jurisdiction, not power to mold substantive law" (quoting *Sosa*, 542 U.S. at 713)); *id.* at 10 (new ATS claims are "impossible").

While the question, "Who are today's pirates?" might have seemed relevant, post-*Sosa*, to individual members of the Supreme Court (though never a majority),[5]

---

[5] *See Jesner v. Arab Bank, PLC*, 584 U.S. 241, 307 (2018) (Sotomayor, J., dissenting); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 129 (2013) (Breyer, J. concurring).

the entire Court acknowledges that *Cisco* bars judicially-implied ATS claims other than the "three implied causes of action previously recognized under the ATS." *Id.* at 10 (Sotomayor, J., dissenting); *id.* (Sotomayor, J. dissenting) ("In short, [the *Cisco* majority] overturns *Sosa*.").

Indeed, Justice Sotomayor's dissent in *Cisco* laments that the majority forecloses judicially-implied causes of action for "today's *torturers*, slave traders, and perpetrators of genocide," acknowledging that "[a]s to *each of these offenses* … the majority decides that there is simply no way that a suit could possibly proceed without offending Congress." *Id.* at 24 (Sotomayor, J., dissenting) (emphasis added). Thus, as the *Cisco* dissent recognizes, once a party goes beyond piracy to argue that its claims are "like," "akin," or "similar" to piracy, there is no further inquiry required. Under *Cisco*, a claim that does not qualify *as piracy* does not correspond to piracy.

*Fourth*, even if analogizing torture and CIDT to piracy were a permissible basis for recognizing claims under the ATS, that would leave open the question whether *conspiracy to commit* torture or CIDT corresponds to piracy. It does not because conspiracy is not itself analogous to the Blackstone Three and because, even today, conspiracy to commit piracy is not recognized as a violation of the law of nations. *United States v. Ali*, 718 F.3d 929, 942 (D.C. Cir. 2013).

*Finally*, agreeing with Judge Quattlebaum, *Al Shimari*, 170 F.4th at 223 (Quattlebaum, J., dissenting), the *Cisco* majority points to the Torture Victim Protection Act, 28 U.S.C. § 1350 note ("TVPA"), as a remedial structure "'*that alone*' precludes the creation of a cause of action." *Cisco*, slip op. at 11 (quoting

9

*Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)). As *Cisco* holds, the existence of a statutory cause of action, for which Congress "had taken no subsequent action to expand the covered conduct," precludes new judicially-implied claims of any type under the ATS. *Id.*

Thus, after *Cisco*, it is insufficient to argue that a proposed ATS claim is analogous or akin to piracy; it must actually be piracy. *Cisco*, slip op. at 12. Plaintiffs do not allege piracy. They never pleaded a claim of piracy, the jury was not instructed on piracy, and the verdict on which the judgment rests includes no piracy claim, which itself requires dismissal. And had Plaintiffs tried to cast their allegations as piracy, they would have failed.

## C. Plaintiffs Did Not and Cannot State Claims for Piracy

Plaintiffs argue that the panel majority "has already concluded that CACI's torts are commensurate with piracy." Pl. Br. 4. The panel majority's observation, however, concerned the extraterritorial reach of permissible ATS claims, not the antecedent question of which claims are permissible. *Al Shimari*, 170 F.4th at 178. Regardless, as explained in Section II.B, the touchstone is whether Plaintiffs' claims are among the "three actions" identified in *Sosa*, not whether they are analogous enough to be created. *Cisco*, slip op. at 12 n.3.

*Cisco* leaves undisturbed *Sosa*'s assumption that the three ATS causes of action "found or discovered" at the time of ATS's enactment would be actionable, *id.* at 12 n.3, but also reinforces that ATS provides courts with no "power to mold substantive law." *Id.* at 7 (quoting *Sosa*, 542 U.S. at 713). Therefore, the correct

question after *Cisco* is whether Plaintiffs' claims qualify as one of the Blackstone Three as found or discovered at ATS's enactment. They do not.

At ATS's enactment, "[t]he offence of piracy, by common law, consist[ed] in committing those acts of robbery and depredation *upon the high seas*, which, if committed upon land, would have amounted to felony there." 4 William Blackstone, Commentaries on the Laws of England 72 (1769) ("Blackstone") (Exhibit B) (emphasis added); *see also United States v. Smith*, 18 U.S. (5 Wheat.) 153, 161 (1820). Plaintiffs agree. Pl. Br. 1. Abu Ghraib was not on the high seas; no one there qualified as a pirate.

Piracy also required a purpose to rob or steal property. Blackstone, *supra*, at 72. Plaintiffs agree with that too. Pl. Br. 1. As the Supreme Court explained in 1820, "all writers concur, in holding, that robbery, or forcible depredations upon the sea, *animo furandi*,[6] is piracy." *Smith*, 18 U.S. (5 Wheat.) at 161; *id.* at 162 ("[W]riters on the common law … universally treat piracy as an offence against the law of nations, and that its true definition by that law is robbery upon the sea."). Plaintiffs neither alleged, nor proved, that their abusers stole, or intended to steal, their property. Plaintiffs' reference to CACI's "pecuniary motive" to maintain its "lucrative contract" (Pl. Br. 12) is analytically distinct from robbery or theft.

Finally, piracy required purely private action for private ends, by persons unaffiliated with any nation. Blackstone, *supra*, at 72; *Smith*, 18 U.S. (5 Wheat.) at

---

[6] *Animo furandi* means "with intention to steal." *United States v. Dire*, 680 F.3d 446, 452 n.6 (4th Cir. 2012) (quoting *Black's Law Dictionary* 87 (6th ed. 1990)).

163 n.h ("A pirate is one who roves the sea in an armed vessel without any commission or passport from any prince or sovereign state, solely on his own authority ...." (citation omitted)).  Torture and CIDT require conduct "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."[7]  Piracy is thus incompatible with torture and CIDT because piracy requires conduct by perpetrators unaffiliated with any country while torture and CIDT require official government action.

Plaintiffs' claims also would not qualify as piracy under the modern definition.  Modern treaties define piracy as requiring illegal acts "*by the crew or the passengers of a private ship or a private aircraft*," directed: (1) on the high seas; or (2) "[a]gainst a ship, aircraft, persons or property in a place outside the jurisdiction of any State."[8]  Thus, the *sine qua non* of modern piracy is that the perpetrators are the "crew or passengers of a private ship or a private aircraft."

---

[7] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, arts. 1, 16, *opened for signature* Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force June 26, 1987).

[8] Geneva Convention on the High Seas, art. 15, *opened for signature* Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 11 (entered into force Sept. 30, 1962) (emphasis added); *see also* United Nations Convention on the Law of the Sea, art. 101, *opened for signature* Dec. 10, 1982, 1833 U.N.T.S. 397 (entered into force Nov. 16, 1994) ("UNCLOS").  UNCLOS defines piracy "in exactly the same terms," as the Geneva Convention on the High Seas "with only negligible stylistic changes." *Dire*, 680 F.3d at 459.

Geneva Convention on the High Seas, art. 15(1); UNCLOS, art. 101.[9] Abu Ghraib does not qualify.

The offenses Plaintiffs allege also were not outside the jurisdiction of any State. Soldiers abusing detainees were criminals, and prosecuted under the UCMJ as such, but were not pirates. The Anti-Torture Act, 18 U.S.C. § 2340(A), and the TVPA, 28 U.S.C. § 1350 note, also apply extraterritorially. Plaintiffs' difficulty is not that the United States lacked jurisdiction to enact laws regulating conduct at Abu Ghraib prison; it is that Congress *did not enact* an ATS private right of action encompassing their claims. Simply put, there has never been a day in the history of the world on which the conduct alleged by Plaintiffs qualified as piracy under the law of nations.

**D.     *Cisco* Precludes Plaintiffs' Foreign Policy Argument**

Plaintiffs also argue their claims can proceed because they "do not raise the foreign policy concerns fundamental to *Cisco*'s analysis." Pl. Br. 12. But *Cisco* holds that "ATS cases by their nature implicate foreign policy" and that "judicial humility" prohibits courts from exercising ATS jurisdiction on the premise that a particular case would be "consonant with U.S. foreign policy interests." *Cisco*, slip op. at 8, 9 n.1. While *Cisco*'s holding permits no exception based on case-

---

[9] Both the Geneva Convention on the High Seas and UNCLOS also include as piracy "inciting" or "intentionally facilitating" the conduct quoted above, which again requires that the perpetrators be the "crew or the passengers of a private ship or a private aircraft." Geneva Convention on the High Seas, art. 15(3); UNCLOS, art. 101(c).

specific foreign policy assessments, Judge Quattlebaum's panel dissent explains how claims such as Plaintiffs' inappropriately require courts to "wade into foreign policy debates." *Al Shimari*, 170 F.4th at 223-25 (Quattlebaum, J., dissenting).

Plaintiffs also inaccurately represent that the United States "endorsed this case in an *amicus* brief submitted to this Court." Pl. Br. 14. The *amicus* brief to which Plaintiffs cite, filed in 2012, concerned the collateral order doctrine, and was filed when there were **no** ATS claims before the Court. JA5324.[10] The United States did not "endorse" Plaintiffs' claims (under ATS or otherwise); it merely concluded that, while a close question, the collateral order doctrine did not allow interlocutory review of the district court's refusal to dismiss Plaintiffs' state-law claims. JA5322. Indeed, the United States' *Cisco* brief asserted that "[t]he Court may now acknowledge that the door that *Sosa* left barely open to new ATS actions should be firmly closed." U.S. *Cisco* Br. at *3, No. 24-856, 2026 WL 561002 (Feb. 25, 2026). That is exactly what *Cisco* held.

Finally, Plaintiffs' last-ditch plea that the Court simply disregard *Cisco*'s jurisdictional holding because Plaintiffs have a jury verdict in hand (Pl. Br. 16) ignores the ironclad requirement of subject-matter jurisdiction at all stages of a case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998), and that *Cisco* "correct[s] *Sosa*'s unfulfilled prediction" that jurisdiction could ever exist

---

[10] The district court dismissed Plaintiffs' ATS claims in 2009, JA368, before the appeal in which the United States filed its *amicus* brief. Unrelated to the appeal, Plaintiffs moved in 2012 for reconsideration of the dismissal of their ATS claims, which the district court granted. JA372.

over claims beyond the Blackstone Three.  *Cisco*, slip op. at 11.  CACI has been disputing subject-matter jurisdiction for eighteen years.  CACI does not lose its jurisdictional defense because the final judgment rule barred appellate review of that defense until after the two trials of this action.

### III.    CONCLUSION

The Court should grant rehearing, vacate the final judgment, and remand with instructions to dismiss for lack of subject-matter jurisdiction.

Respectfully submitted,


*/s/   John F. O'Connor*

John F. O'Connor
Linda C. Bailey
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone
joconnor@steptoe.com
lbailey@steptoe.com

Nina J. Ginsberg
GREENSPUN SHAPIRO
GINSBERG & YANG, P.C.
3955 Chain Bridge Road, 2nd Floor
Fairfax, Virginia 22030
(703) 352-0100 – telephone
njg@greenspunlaw.com

*Counsel for Appellant CACI Premier
Technology, Inc.*


July 14, 2026

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

I, John F. O'Connor, hereby certify that:

1. I am an attorney representing Appellant CACI Premier Technology, Inc.

2. This brief is in Times New Roman 14-pt. type. Using the word count feature of the software used to prepare the brief, I have determined that the text of the brief (excluding the cover page, table of contents, table of authorities, certificates of compliance and service, and signature block) contains 3,864 words.

*/s/  John F. O'Connor*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2026, I caused a true copy of the foregoing to be filed through the Court's electronic case filing system, which automatically serves a true copy of the foregoing on all counsel of record.

/s/   John F. O'Connor