**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

SUHAIL NAJIM ABDULLAH AL SHIMARI, *et al.*,

*Plaintiffs-Appellees*,

v.

CACI PREMIER TECHNOLOGY, INC.,

*Defendant-Appellant*.

No. 25-1043

---

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANT-APPELLANT'S BILL OF COSTS**

## INTRODUCTION

Defendant-Appellant CACI Premier Technology, Inc. ("CACI"), a multibillion-dollar U.S. corporation, seeks to collect costs against Plaintiffs-Appellees, three Iraqi men who a jury found were subjected to torture by CACI at Abu Ghraib prison. CACI does so, even as it lost on every one of the issues it raised as part of its direct appeal of the jury verdict, and only because it was able to prevail on rehearing due to the outcome in a different case obtained by different counsel at the Supreme Court in June 2026. The Supreme Court's decision in *Cisco Systems, Inc. v. Doe I*, 609 U.S. __, 146 S. Ct. 1882 (2026) overturned decades of settled law regarding the test for claims brought under the Alien Tort

Statute ("ATS") that the Plaintiffs and this Court had relied upon during these eighteen years of litigation, including in the panel's decision. *See Al Shimari v. CACI Premier Tech., Inc.*, 170 F.4th 162, 182 n.10 (4th Cir. 2026) ("*Al Shimari VI*") ("[W]e are not persuaded by this [argument from CACI] or any other arguments in the government's brief in *Cisco*."). Indeed, the fortuity of this outcome was made possible because of the delay tactics undertaken by CACI throughout this litigation. *See* ECF No. 114 at 13-14 (providing overview of CACI's abuse of process in the appellate and the trial courts to delay litigation).

Having spent millions of dollars on a scorched-earth litigation strategy in this Court and in the court below, CACI— whose parent company reported over $8 billion in revenue in 2025[1]—of course does not need the $8,790.60 it seeks to take from these three traumatized men, especially when CACI has so far avoided having to *pay them* $42 million in accordance with the jury's November 2024 verdict. Instead, CACI seeks to punish these individuals, for holding it to account for its role in the historical atrocities at Abu Ghraib. After hearing all the evidence at trial of CACI's conduct at Abu Ghraib—including corporate malfeasance and deflection—the jury awarded $33 million in punitive damages against CACI.

---

[1] CACI International Inc., *Fiscal Year 2025 Annual Report*, p. 5. Accessible at https://filecache.investorroom.com/mr5ir_caci/240/CACI_FY25_Annual-Report.pdf (last visited Sept. 14, 2026).

This Court has broad equitable discretion to deny a request for costs where, as here, the questions were close and contested. Indeed, the panel upheld that verdict before the Supreme Court's reinterpretation of the ATS, which overturned decades of ATS jurisprudence and precedent; the case has significant public importance; and the comparative financial status of the parties would make taxing these three torture survivors for costs paid by a billion-dollar corporation deeply unjust.

## BACKGROUND

This Court is familiar with the complicated factual and procedural history of this case. *See generally Al Shimari VI*, 170 F. 4th 162.[2] In short, it includes four merits decisions from this Court (including one *en banc* decision in Plaintiffs'

[2] *See also Al Shimari v CACI Int'l, Inc.*, 679 F.3d 205 (2012) ("*Al Shimari II*") (11-3 en banc opinion holding that CACI's interlocutory appeal was improper); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516 (2014) ("*Al Shimari III*") (holding Plaintiffs' ATS claims were sufficiently "touch and concern" the United State so as to survive the Supreme Court's application of the presumption against extraterritoriality to the ATS); *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 137 (2016) ("*Al Shimari IV*") (holding that the political-question doctrine did not bar plaintiffs' claims asserting nondiscretionary violations of international law); *Al Shimari v. CACI Premier Tech., Inc.*, 775 Fed. App'x 758 (4th Cir. 2019), *cert. denied*, 141 S. Ct. 2850 (2021) ("*Al Shimari V*") (summary dismissal of CACI's second interlocutory appeal, as foreclosed by the *en banc* ruling in *Al Shimari II*). CACI also sought mandamus review twice before the Fourth Circuit. Petition for a Writ of Mandamus, *Al Shimari v. CACI Premier Tech., Inc.*, 775 Fed. App'x 758 (4th Cir. 2019) (No. 19-1238); Petition for a Writ of Mandamus, *Al Shimari v. CACI Premier Tech., Inc.*, 775 Fed. App'x 758 (4th Cir. 2019) (No. 23-1932).

favor), two unsuccessful interlocutory appeals by CACI, CACI's unsuccessful petition for *certiorari*, over 25 motions to dismiss by CACI, and two jury trials. In November 2024, after sixteen years of litigation, CACI was finally held accountable by a jury for its participation in a conspiracy to inflict torture and cruel, inhuman and degrading treatment ("CIDT") on detainees at Abu Ghraib prison, including the Plaintiffs. The jury awarded each Plaintiff $3 million in compensatory damages, and, in light of the evidence presented of CACI's shocking conduct, $11 million in punitive damages.

After the District Court denied CACI's motion to set aside the jury verdict, CACI noticed its appeal to this Court on January 10, 2025. CACI filed its opening brief on March 3, 2025, ECF No. 29, and Plaintiffs filed their opposition brief on May 1, 2025, ECF No. 42. CACI then sought expansions of its reply brief and filing date, ECF Nos. 57, 58, justifying its need for an extension because the United States was a party to CACI's appeal—even though CACI ultimately devoted a fraction of the extra pages (and extra time) it obtained to addressing the third-party claims against the United States. ECF No. 29 (CACI's opening brief, two pages); ECF No. 94 (CACI's reply brief, just over two pages). CACI ultimately filed its reply approximately 9 weeks after its first extension motion, on July 23, 2025. *Id*.

CACI's appeal raised ten issues for this Court's review. On March 12, 2026, a panel of this Court issued *Al Shimari VI*, affirming the jury's verdict in favor of Plaintiffs and rejecting each one of CACI's ten grounds for appeal. The Court held that this case represents a "paradigmatic application of the ATS," *Al Shimari VI*, 170 F.4th at 185, as it "furthers 'the principal objective of the ATS': 'to avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen.'" *Id*. at 185-86 (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 255 (2018)). This Court further emphasized, nothing would be "more offensive to the arena of foreign relations than to proclaim that courts of the United States may not provide a remedy to foreign nationals who were tortured by members of the U.S. military as part of a conspiracy to extract intelligence using universally condemned means of interrogation." *Id*. at 186.

Notably, in its opinion affirming the jury's verdict, the Court reprimanded CACI twice for "misrepresent[ing] authority to a self-serving result," which the Court described were "troubling offenses to counsel's duty of candor to the tribunal." *Id*. at 195 n. 19; *see also* n. 30.

Six weeks later, on April 24, 2026, CACI filed a Petition for Rehearing or Rehearing En Banc, ECF No. 109, registering its disagreement with the panel's opinion in favor of Plaintiffs; none of CACI's disagreements conflicted with

precedent or existing law, or otherwise merited full court review. *See* ECF No. 114 at 7-11. On the same day, CACI also filed a motion to hold its Petition for Rehearing in abeyance, pending the disposition of *Cisco Systems, Inc. v. Doe I* in the Supreme Court. ECF No. 110. Four days later, on April 28, 2026, Plaintiffs opposed CACI's motion to hold its Petition for Rehearing in abeyance, arguing, *inter alia*, that rehearing is authorized if a panel decision was *presently* in conflict with authority of this Court or of existing Supreme Court decisions. Fed. R. App. P. 40(b); Local Rule 40(b); *see generally* ECF No. 114. This Court's decision in *Al Shimari VI* was not. In the ordinary course, had rehearing been denied, the mandate would have issued seven days following that denial, Fed. R. App. P. 41, and this Court's jurisdiction would have been discharged. But the Court did not rule on CACI's motion to hold its rehearing petition in abeyance, and the Court also left CACI's petition for rehearing pending.

On April 28, 2026, the Supreme Court heard arguments in *Cisco*. The relevant question presented in *Cisco* was narrow, tailored to the specific dispute before the Supreme Court: "Whether the Alien Tort Statute ('ATS'), 28 U.S.C. § 1350, allows a judicially-implied private right of action for aiding and abetting." But the *Cisco* Court chose to go far beyond the question presented, reaching far outside that narrow question. Indeed, the *Cisco* Court ruled that—contrary to over twenty years of ATS jurisprudence, including three ATS opinions issued by the

Supreme Court during the pendency of this 18-year case, *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013); *Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018); and *Nestlé USA, Inc v. Doe*, 593 U.S. 628 (2021) —only "causes of action are available for torts corresponding to the Blackstone three," *Cisco Systems*, 146 S Ct. at 1892, and that the aiding-and-abetting claims brought against Cisco would imperil foreign relations because they turned on actions taken by a foreign government (China) in a foreign country against its own citizens, *id*. at 1890.

Following the Supreme Court's ruling in *Cisco*, this Court ordered supplemental briefing. ECF No. 118. Plaintiffs argued that CACI's conduct in this unique case—namely, abuses of foreign national civilians for profit, by an American company acting contrary to any state sanction or authorization, and in a place beyond the authority of any foreign sovereign akin to the high seas—are torts in violation of international law that "correspond to" piracy and therefore meet the new test announced in *Cisco*. *See* ECF No. 119 (citing *Cisco*, slip op. at 12); *see also Al Shimari VI*, 170 F. 4th at 178 (for purposes of the Alien Tort Statute and issues of extraterritoriality, explaining that CACI's "acts of torture [are] commensurate with acts of piracy" and CACI is a "modern-day pirate[]").

Moreover, Plaintiffs further argued that their claims did not raise the foreign policy concerns fundamental to the *Cisco* Court's analysis, namely, that in <u>this</u>

case, there was no "danger of unwarranted judicial interference in the conduct of foreign policy." ECF No. 119 at 18 (citing *Cisco*, slip op. at 8). As this Court emphasized, nothing would be "more offensive to the arena of foreign relations than to proclaim that courts of the United States may not provide a remedy to foreign nationals who were tortured by members of the U.S. military as part of a conspiracy to extract intelligence using universally condemned means of interrogation." *Al Shimari VI*, 170 F. 4th at 186.

On August 28, 2026, the panel issued a *per curiam* opinion on rehearing, concluding that the Supreme Court's decision in *Cisco* required reversal of the jury's verdict here, which Plaintiffs had obtained after more than sixteen years of litigation. ECF No. 126. The Court remanded to the District Court to dismiss this case. Plaintiffs presently intend to seek Supreme Court review of this *per curiam* decision.

Three days later, on August 31, 2026, CACI filed a Bill of Costs for $8,790.60, seeking to tax those costs against the three Plaintiffs who successfully held CACI accountable for their torture and cruel treatment at Abu Ghraib prison.

## ARGUMENT

### I. AWARDING COSTS TO CACI WOULD BE MANIFESTLY UNJUST

Federal Rule of Appellate Procedure 39 authorizes an award of costs to a prevailing party, unless the "court orders otherwise." Accordingly, "this broad

language does not limit the ways in which the court of appeals can depart from the default rules," and "gives discretion over the allocation of appellate costs to the courts of appeals." *City of San Antonio, Texas v. Hotels.com, L. P.*, 593 U.S. 330, 337, 338 (2021); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 800 F.2d 1256, 1266 (4th Cir. 1986) ("Under [Rule 39], an appellate court has wide discretion in the taxation of costs"); *see also Moore v. Cty. of Del.*, 586 F.3d 219, 222 (2nd Cir. 2009) (Rule 39 "affords this Court discretion to deny costs even if otherwise properly taxable" and that discretion turns on "equitable" considerations).

In exercising that equitable discretion, courts have looked "to many of the same factors that guide a district court's equitable discretion in awarding or denying costs pursuant to Fed. R. Civ. P. 54," and "denial of costs may be appropriate where a losing party can demonstrate misconduct by a prevailing party, the public importance of the case, the difficulty of the issues presented, or its own limited financial resources," *Moore,* 586 F.3d at 221 (citing cases), or the disparity between the financial positions of the parties, *see, e.g.*, *Bowoto v. Chevron Corp.*, 2009 WL 1081096 at *2 (N.D. Cal. April 22, 2009) (under Rule 54, denying costs where "the economic disparity between plaintiffs, who are Nigerian villagers, and defendants, international oil companies, cannot be more stark"). *See also Ellis v. Grant Thornton LLP*, 434 F. App'x 232, 235 (4th Cir. 2011) (listing similar factors

that justify denying an award of costs in the Rule 54 context). In short, courts have discretion to deny an award of costs "where there would be an element of injustice in a presumptive cost award." *Id.*; *see Levy v. Lexington Cnty., S.C.*, No. CA 3:03-3093-MBS, 2012 WL 6675051, at *2-*3 (D.S.C. Dec. 20, 2012) (denying bill of costs under parallel Rule 54-standard, where "the issues were close and difficult," the claims were "of paramount importance, and the court is of the opinion that Plaintiffs were sincere in advancing the within litigation").

Numerous considerations demonstrate that it would be deeply unjust, indeed even perverse, to grant CACI costs for this appeal to be taxed against these Plaintiffs, who were found by a jury to have survived torture at Abu Ghraib prison as a result of CACI's conduct.

**A. The Issues Presented in This Appeal Were Close and Complex**

What is remarkable about CACI's request is that it seeks costs for an appeal that presented ten issues for review, all of which this Court rejected entirely under what was then well-established law. To be sure, the Court following *Cisco* reversed its prior decision, but that outcome had nothing to do with CACI's own advocacy in this matter or the number of pages CACI filed in connection with the appeal for which it now seeks costs. It happened because of advocacy by *other* lawyers in a *different* case; because the Supreme Court decided a question that was not actually presented to it; and, because the Supreme Court abandoned the legal

framework for the ATS that it had set forth in its 2004 decision in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), which the Supreme Court subsequently reaffirmed *three times* during the lifespan of this case.

So here, the issues were "close" or "difficult." *See Ellis*, 434 F. App'x at 235 (affirming denial of costs award to prevailing defendant where the issues in the case were "close and difficult"). And the ultimate outcome of one of those issues was unforeseeable, in light of decades of pronouncements from the Supreme Court. *See Sosa*, 542 U.S. at 719 ("[T]here is every reason to suppose that the First Congress did not pass the ATS as a jurisdictional convenience to be placed on the shelf for use by a future Congress or state legislature that might, someday, authorize the creation of causes of action or itself decide to make some element of the law of nations actionable for the benefit of foreigners."); *Kiobel*, 569 U.S. at 115 ("We held in [*Sosa*], however, that the First Congress did not intend the provision to be "stillborn." The grant of jurisdiction is instead "best read as having been enacted on the understanding that the common law would provide a cause of action for [a] modest number of international law violations."); *Jesner,* 584 U.S. at 254 ("the statute was not enacted to sit on a shelf awaiting further legislation"); *Nestlé USA, Inc.,* 593 U.S. at 631 ("courts may exercise common-law authority under this statute to create private rights of action in very limited circumstances").

Ultimately, CACI's windfall had nothing to do with its own advocacy or work in its appeal raising ten issues for review, all of which were rejected by this Court. Plaintiffs should not have to pay for the paper those unsuccessful arguments were printed on, just because CACI fortuitously benefited from a result in a different case that was contrary to the applicable law at the time CACI filed and litigated this appeal. *See Musick v. Dorel Juv. Grp., Inc.,* No. 1:11CV00005, 2012 WL 473994, at *2 (W.D. Va. Feb. 13, 2012) (a case's closeness "is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case.") (quoting *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732–33 (6th Cir. 1986) (internal citation omitted)).

**B. The Disparity Between the Positions of the Parties**

The disparity between the financial positions of the parties and a party's difficulty of making payment are relevant equitable considerations. *Moore*, 586 F.3d at 222; *Ellis*, 434 Fed. Appx. at 235; *Musick*, 2012 WL 473994, at *1-*2 (denying award of costs in part because plaintiff had a "very modest income and assets").

First, CACI International, the parent company that provided security for the $42 million judgment against CACI, has a market capitalization of over 13 *billion*

dollars as of September 10, 2026.[3] Now CACI seeks printing costs from three individuals in their 50s and 60s—a schoolteacher, a produce seller, and a freelance journalist—whose combined resources are infinitesimal compared to CACI, which CACI surely knows. *See, e.g.*, *Bowoto*, 2009 WL 1081096 at *2 (under Rule 54, denying costs where "the economic disparity between plaintiffs, who are Nigerian villagers, and defendants, international oil companies, cannot be more stark").

Second, the jury in this case found CACI responsible for conspiring to torture and inflict cruel treatment on detainees at Abu Ghraib prison, including the three Plaintiffs, causing severe physical and longstanding mental harm that has upended their lives. That jury considered all the evidence presented at trial—including from multiple United States Army Generals, who investigated what happened at Abu Ghraib, and Army Military Police, who were courts martialed for their participation in the torture of detainees at Abu Ghraib prison. The Supreme Court's decision in *Cisco* years later does not change the reality that the jury, hearing all the evidence at trial, made factual findings about CACI's participation in that torture in returning a verdict in favor of Plaintiffs.

Yet now, CACI proceeds to go after the same individuals who testified at trial about CACI's involvement in their torture at Abu Ghraib; the jury credited

[3] *See CACI International Inc. Class A*, CNN, https://www.cnn.com/markets/stocks/CACI (last visited Sept. 14, 2026).

their testimony, rejected CACI's, and saw fit to impose $33 million in punitive damages against CACI. In all these circumstances, it would be manifestly unjust to make Plaintiffs, men who endured such cruelty and abuse, pay for CACI's paper and printing.

Third, this cruelty is likely the point. Obviously, CACI does not need the $8,790.60 it seeks from Plaintiffs. By seeking costs, CACI is attempting to intimidate those who might speak out against abuses by it and other large, powerful U.S. corporations. And that adds to the reasons why this Court should deny CACI's motion. Indeed, courts have recognized that "the chilling effect of imposing . . . high costs on future civil rights litigants," is a compelling reason to deny costs to a prevailing party that has superior resources. *Assoc. of Mexican-American Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000) (en banc); *Bowoto*, 2009 WL 1081096, at *1 (recognizing that award of costs in an ATS case would have a "chilling effect" on future civil rights litigants).

**C. The Public Importance of the Case**

Two decades removed from the scandal that bears its name, Abu Ghraib remains a symbol of incomprehensible horror. The images of U.S. civilians and military personnel degrading Iraqi civilians produced worldwide shock; those atrocities represented one of the most shameful episodes in modern American history, producing worldwide outrage and a demand for accountability from

President Bush, both houses of Congress, and others.[4] The United States Government agreed in proceedings in this very case that Plaintiffs' torture claims should proceed given the strong federal interest in preventing and remediating torture.[5] And, as the Supreme Court has previously proclaimed, "[F]or purposes of civil liability, the torturer has become—like the pirate and slave trader before him—*hostis humani generis,* an enemy of all mankind." *Sosa*, 542 U.S. at 732 (quoting *Filártiga v. Peña-Irala,* 630 F.2d 876, 890 (2d Cir. 1980)).

Plaintiffs braved innumerable obstacles for eighteen years to obtain some measure of justice and accountability for CACI's well-documented involvement in the abuses at Abu Ghraib. Plaintiffs testified to their torment and trauma in a court foreign to them, and prevailed upon an American jury to compensate them in part

---

[4] White House, Press Release, President Bush Meets with Al Arabiya Television, 2004 WLNR 2540883 (May 5, 2004) (statement of President Bush calling for "justice to be served" for atrocities at Abu Ghraib); s*ee also Al Shimari III*, 758 F.3d at 521 (noting both houses of Congress condemned the abuses as violating the "policies, orders, and laws of the United States and the United States military" and "urg[ed] that all individuals responsible for such despicable acts be held accountable." (quoting H.R. Res. 627 and S. Res. 356, 108th Cong. (2004)).

[5] The United States asserted that "ensuring that military detention operations are conducted in a manner consistent with humane treatment obligations and the laws of war, and ensuring that contractors are held accountable for their conduct by appropriate means" are "uniquely federal interests"; accordingly, "the balance of federal interests in this case therefore ultimately weighs in favor of allowing [*even*] a state-law tort claim to proceed to the extent a civilian contractor actually engaged in torture in violation of federal law." Br. for the U.S. as *Amicus Curiae*, JA5323, 5335, 5343-44.

for their injuries as well as to punish CACI for its shocking conduct. In this case, the Fourth Circuit has devoted substantial time—since 2011, and over five substantive appellate decisions—to create guideposts for the fair adjudication of complex claims such as these and, in so doing, affirmed the capacity and responsibility of the federal courts to handle and resolve such controversies.

Plaintiffs demonstrated remarkable courage, bravery and resilience, which yielded success before an American jury after so many years of hard-fought litigation. They should not unjustly bear the costs of an unforeseeable and fundamental change of law, which occurred in a different case and after this Court fully vindicated the jury's verdict in their favor, which has so far erased their hard-fought and hard-won claims effectively one stroke before midnight of finality.

**CONCLUSION**

For the foregoing reasons, the Court should deny CACI's Bill of Costs to tax Plaintiffs in the amount of $8,790.60.

September 14, 2026

Respectfully submitted,

*/s/ Michael F. Buchanan*

Baher Azmy
Katherine Gallagher
CENTER FOR CONSTITUTIONAL

RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Michael F. Buchanan
Andrew Haddad
Alexandra Mahler-Haug
James Mayer
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
mfbuchanan@pbwt.com

## CERTIFICATE OF SERVICE

I certify that on September 14, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Michael F. Buchanan*

Michael F. Buchanan